### 18680

The STATE, Respondent, v. Silas NELSON, Appellant

(156 S. E. (2d) 341)

Messrs. *Fred Henderson Moore* and *John Howard Wirghten,* of Charleston, *for Appellant,*

Messrs. *Arthur Howe, Solicitor,* and *Robert Wallace* and *A. Arthur Rosenblum, Assistant Solicitors,* of Charleston,

8

July 25, 1967.

LEWIS, Justice.

The defendant Silas Nelson has appealed from his conviction of robbery and grand larceny, for which a sentence of six years was imposed. The sole question for decision is whether a pretrial sight and voice lineup identification of defendant by the prosecuting witness deprived the defendant of due process of law so as to make testimony of such identification inadmissible in evidence at his subsequent trial. Questions raised as to whether the manner in which such identification was conducted deprived defendant, under the United States Constitution, of his Fifth Amendment rights against self-incrimination and his sixth Amendment right to assistance of counsel have been recently decided against his contentions by the United States Supreme Court in *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. (2d) 1199, where it was held that the rights accorded in *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. (2d) 1149, and *Gilbert v. State of California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. (2d) 1178, would not be applied retroactively.

The Federal test for determining the due process question is whether "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law," the determination of which "depends on the totality of the circumstances surrounding it." *Stovall v. Denno, supra.*

The defendant was convicted of robbing the Miracle Dry Cleaner's substation, in the City of Charleston. This place of

business was a station where clothes were brought, then sent to the main plant for cleaning and returned for pick up by the customers. It was managed by Mrs. Frances Pucino. On December 15, 1964, at about 4:45 P. M., as Mrs. Pucino was standing at the counter writing a ticket, she heard someone enter, looked up, and saw a man who spoke with a soft voice, not of a Charleston accent, standing across the narrow counter in front of her, holding an open switch-blade knife on his arm and leaning on the counter. He said, "Lady, I am very sorry that I have to do this, but I need your money." She was told to open the cash register, which she did, and the man reached in and took the paper money out of two different slots. Upon his demand, she gave him the change and he put it in his pocket. The amount of money taken was between $56.00 and $60.00. He told her to sit down and be quiet, that he didn't want to hurt her. He then turned slowly and walked out of the store past the front windows. The man was in the store for about five minutes and she stated that she had a good look at his face, but had never seen him before. Mrs. Pucino immediately called the police who arrived in just a few minutes.

When the police arrived, Mrs. Pucino gave them a description of the man who had robbed her. She described the man as being colored, between 25 and 30 years of age, about five feet six inches tall, dark complexion, weighing about 145 to 155 pounds, and had a thick mustache. He was wearing a bomber-type jacket of conservative color, with elastic waist, a zipper front, quilted lining, and zipped half way up.

The police immediately began a search for an individual fitting the above description. On the evening of the robbery, December 15, 1964, Mrs. Pucino was called to the police station to see if either of two suspects was the one who had robbed her. After viewing them, she stated that neither was the one.

A few days later, in their investigation of the crime, the officers learned from one Willie Capers that he saw the de-

fendant Nelson, in the vicinity running across the street shortly after the crime, and that the defendant was wearing a short, zippered jacket of a beige color. Upon this information the officers began a search for the defendant, but were unable to locate him until February 1965.

About February 15, 1965, approximately eight weeks after the crime, Mrs. Pucino was called to the police station for the purpose of viewing a suspect. She viewed a lineup of three men through a one-way glass. All of the suspects were colored and approximately the same size. Their complexion was approximately the same and two had mustaches. All wore different type clothing and neither had on a jacket of the type worn by the one who committed the robbery. Upon viewing them, she made a positive identification of the defendant as being the one who had committed the robbery. However, apparently because of the character of the voice of the man who committed the crime, Mrs. Pucino told the officer in charge that she would like to hear the suspects speak. The officer then had them turn around with their backs to Mrs. Pucino as she entered, and asked each of them questions, such as, their names, addresses and whether they had been certain places. Each was then asked to repeat a phrase which, as she recalled, was something like, "Melvin, give me your car key." She again identified the defendant as the man who had robbed her.

Mrs. Pucino, a few days later, again identified the defendant at the preliminary hearing and, subsequently, at the trial which resulted in his conviction. He was represented by counsel and Mrs. Pucino was subjected to extensive cross examination. Her testimony was supported by that of another witness who placed defendant in the vicinity of the crime.

The defense of the defendant was an alibi, supported by his own testimony and that of several other witnesses. He gave his version of the lineup, the names of the suspects exhibited along with him, and the physical characteristics of each. His testimony as to these characteristics differed

from that given by the witnesses for the State. Under the conflicting testimony the jury resolved the issues against the defendant and found him guilty of the offense charged.

We do not think that the admission of testimony relative to the lineup identification of the defendant or the subsequent in-court identification of him by the prosecuting witness deprived the defendant of due process of law or in any way violated his constitutional right to a fair trial. The circumstances under which the defendant was exhibited in the lineup were not "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno, supra.* There was no opportunity for suggestion in the procedure used. The suspects placed in the lineup had similar physical characteristics. Two had mustaches, one of them the defendant. None wore clothing similar to that worn by the criminal. The lineup provided other voices for comparison with that of defendant. The sole purpose of having them speak was to further verify, by hearing their voice, the previous positive visual identification. No independent information was elicited from the suspects and the words repeated by them were not used at the time of the robbery. There was no reenactment of the crime. Cf. *State v. Taylor,* 213 S. C. 330, 49 S. E. (2d) 289, 16 A. L. R. (2d) 1317.

We think that the circumstances surrounding the lineup identification were such as to afford Mrs. Pucino the opportunity to form an impartial judgment as to whether the defendant was the man who robbed her. Testimony as to her identification was properly admitted in evidence for the jury to determine its credibility.

Counsel for defendant conceded in oral argument that, if the testimony relative to identification was admissible, there was ample testimony to sustain the conviction. Therefore, the exception challenging the sufficiency of the evidence is not considered.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.