## 18838

The STATE, Respondent, v. James Henry LYONS, Appellant

(164 S. E. (2d) 445)

*Messrs. F. Dean Rainey, Jr.,* and *Jesse M. Ray,* of Greenville, *for Appellant,*

542

B. O. *Thomason, Jr., Esq., Solicitor,* of Greenville, *for Respondent,*

November 13, 1968.

Moss, Chief Justice.

James Henry Lyons, the appellant herein, was arrested in December, 1966, and charged in a three-count indictment with the crimes of robbery, assault and battery of a high and aggravated nature and grand larceny. This is an appeal from his conviction of assault and battery of a high and aggravated nature and robbery.

It appears from the testimony that Mrs. Dorothy Waldrop was a clerk in the College Street Package Store, a licensed liquor store, located in the City of Greenville, South Carolina, and while alone therein, on December 10, 1966, at about 12:30 P.M. a Negro man entered said store, struck her several times with his fist, robbed the cash register and took her wrist watch and wedding ring and a sum of money from her pocketbook. The assailant led the prosecuting witness into a back storage room of the store. The Negro man was in the store for about fifteen minutes and the witness was in close proximity to him during this period of time. After the Negro man left the store Mrs. Waldrop immediately called the owner of the store and the police. The witness gave the police a description of the man who had assaulted and robbed her. She described him as

being a Negro man about five feet, five or six inches tall, and weighing approximately 150 to 155 pounds. He was wearing a dark sweater described as a crew or turtleneck and had on plastic rimmed sun glasses and these were dislodged while he was making an assault upon the witness.

It appears from the record that on December 14, 1966, and this was elicited by the appellant on cross examination, Mrs. Waldrop was called to the Greenville Police Department to see if she could identify a suspect, and, according to her testimony there were four persons in a lineup, all being Negro males. The appellant did not have counsel at the lineup. The witness identified the appellant in the lineup as being the one who had assaulted her and robbed the store. The witness testified that she looked at the four men in the lineup for about fifteen minutes and identified the third man in the lineup as her assailant. None of the participants in the lineup were required to speak.

The witness was extensively cross examined by counsel for the appellant, particularly as to the approximate weights and heights of the other men in the lineup. Her attention was directed to testimony that she had given at a previous trial of this case, and from such testimony it was shown that the first man from left to right in the lineup was about five feet ten inches tall and weighing 180 pounds; the next one was described as smaller, about 5 feet 8 inches and weighing 160 pounds; the third man was the person who assaulted the witness and the fourth man was about 5 feet 10 inches tall and weighing about 170 pounds. She testified further that "the only person she had any reason to remember was the man who beat her up." This witness also testified that she had viewed several photographs submitted by the officers and that the appellant's photograph was among the ones she viewed.

The only other evidence, besides that given by Mrs. Waldrop, was the testimony of one Nobie Whitefield. He testified that he saw the appellant about a block away from the College Street Package Store going in the direction thereof.

He described the appellant as having on a black turtleneck sweater and was wearing sun glasses. He was in company with another person who had on a white raincoat. He stated that he saw the appellant going in the direction of the liquor store at about 12:30 P.M. on the day of the robbery. This witness admitted that he had never seen the appellant before and that he had previously been convicted of the crime of larceny and had served his sentence therefor.

The record shows that three young Negro men were sitting behind the table used by counsel for the appellant. They were asked to stand at the request of counsel for the appellant. Later these three men were placed on the stand by the appellant. The first one testified that he was in custody for housebreaking and armed robbery and that he was 5 feet 11½ inches tall and weighed between 165 and 167 pounds. He stated that he was No. 3 in the lineup heretofore referred to. A second negro male testified that he participated in the lineup and that he was 6 feet 1 inch tall and weighed 196 pounds. The third man testified that he participated in the aforesaid lineup and he was 6 feet 1½ inches tall and weighed 170 pounds. These three witnesses and the appellant were allowed to form a demonstrative lineup in the courtroom and in the presence of the jury.

The appellant called as a witness an officer who was present when the lineup took place. This officer testified that it was normal practice to keep the names of the persons who participated in a lineup but he did not find such names in the file on this case. This officer's attention was directed to three young Negro men who were sitting behind the appellant's counsel table and he was unable to identify them as participants in the lineup. He testified further that he never at any time pointed out the appellant to Mrs. Waldrop or gave any indication to her that the appellant was the one who had assaulted her and robbed the store.

There was testimony from Mrs. Waldrop that another person was with the appellant when he came into the liquor store and that such person was wearing a light colored coat.

She stated that she never saw his face and hence could not identify him. She stated that the person accompanying the appellant told him not to take her wedding ring.

At appropriate stages of the trial counsel for the appellant made timely motions to strike the testimony of Mrs. Waldrop relating to her identification of the accused as the perpetrator of the offenses charged on the ground (1) that said identification was based on a prior identification at a lineup at which the accused was not accorded the benefit of counsel; (2) that said identification was based on a prior identification at a lineup which was unnecessarily suggestive and conducive to irreparable mistaken identification and its admission into evidence deprived the accused of a fair trial and the due process of law accorded him under the South Carolina Constitution and under the Fourteenth Amendment of the United States Constitution; and (3) that there was no clear and convincing evidence that the in-court identification of the accused was in any way independent of the prior identification at the lineup.

It is the position of the appellant that his pretrial lineup identification by the prosecuting witness, in the absence of counsel, deprived him of rights guaranteed to him by the Sixth Amendment to the United States Constitution. The Supreme Court of the United States has held that an out-of-court identification of an accused at a police lineup is a critical stage at which the accused has a constitutional right to the assistance of counsel. *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, ·18 L. Ed. (2d) 1149, and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. (2d) 1178.

However, in the case of *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. (2d) 1199, decided on June 12, 1967, it was held that the rights accorded by the *Wade* and *Gilbert* cases would not be applied retroactively and would apply only to all future cases which involve confrontations for identification purposes conducted in the absence of counsel. It follows that since 'the lawyerless lineup in this case

was conducted on December 14, 1966, 'which, of course, is prior to. June 12, 1967, the date of the *Stovall* decision, the rule in the *Wade* and *Gilbert* cases is inapplicable. We find no error on the part of the trial judge in refusing to strike the testimony of Mrs. Waldrop on the ground that such was based on an out-of-court identification of the accused at a police lineup conducted without the benefit of counsel. *Pearson v. United States,* 5 Cir., 389 F. (2d) 684; *United States v. Hutto,* 4 Cir., 393 F. (2d) 783, and *State v. Nelson,* 250 S. C. 6, 156 S. E. (2d) 341.

The appellant also contends that the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. The claim of a violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. (2d) 1199.

The record indicates that Mrs. Waldrop was shown several photographs of possible suspects. Included therein was one of the appellant. The exhibition of these photographs to the witness was for the proper purpose of identifying a possible suspect, there being no suggestion as to which one of the photographs represented the person who had assaulted and robbed the witness. It further appears that the witness viewed in the lineup a group of four Negro men and even though there is some disparity as to heights and weights the witness picked the third man in the lineup as the person who had attacked her. It should be remembered that Mrs. Waldrop, in testifying what happened during the assault and robbery, had every opportunity to see the appellant. We quote from her testimony:

"Q. All right. How close was he to you when his glasses fell off?

"A. Approximately here. (INDICATING)

"Q. Let the record show the witness showed approximately twelve (12) inches.

"Q. I want to ask you whether or not you had a good look at him at that time or not.

"A. Yes, sir, I did."

And again she testified:

"Q. All right. Now, how close were you to him in the back room?

"A. Very close.

"Q. Was it as close as you were before?

"A. When he sat me down, yes, sir."

Mrs. Waldrop when asked by the Solicitor to point out the man who came in the store that morning testified, "The man sitting directly behind Mr. Fay (of counsel for the appellant) came in."

The appellant was permitted during the trial to form a demonstrative lineup in the courtroom and in the presence of the jury. Counsel for the appellant was present at this lineup. Under all of the evidence in this case we think the question of whether the lineup was so unnecessarily suggestive and conducive to mistaken identification was a question of fact of determination by the jury. The trial judge submitted this issue to the jury and charged them with reference thereto as follows:

"I charge you if you find from the evidence that the lineup conducted at the police station at which Mrs. Waldrop identified the accused was made up in such a manner as to suggest the accused, the accused being the same as the defendant, as the person suspect of the crime, or was otherwise conductive to a mistaken identification, then the burden is on the prosecution to establish beyond a reasonable doubt that her in-Court identification of the accused at the trial was in no way dependent on or influenced by her previous identification at the lineup."

It is our conclusion that the trial judge did not err in admitting the testimony of Mrs. Waldrop as to her identification of the appellant as the perpetrator of the offenses charged on the ground that it was based on

a prior identification at a lineup which was unnecessarily suggestive and conducive to mistaken identification. There was evidence from which the jury could conclude that the in-court identification of the appellant was independent of the prior identification of him in the lineup. Having found that the testimony relative to the identification of the appellant was admissible there was ample evidence to sustain his conviction.

The judgment below is affirmed.

LEWIS, BUSSEY and LITTLEJOHN, JJ., and CLARENCE E. SINGLETARY, Acting Associate Justice, concur.