**Wayne FONG, #26898, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 68-219.**

United States District Court
D. Oregon.

Nov. 14, 1968.

William E. Hurley, Portland, Ore., for petitioner.

Sidney I. Lezak, U. S. Atty., Richard C. Helgeson, Asst. U. S. Atty., Portland, Ore., for respondent.

## OPINION

SOLOMON, Chief Judge:

Wey Him Fong[1] (Petitioner) seeks relief under 28 U.S.C. § 2255. He asserts that his guilty plea must be vacated because he did not know that he would be ineligible for parole.

In April, 1958, a twelve-count indictment charged Petitioner with narcotics crimes in violation of 26 U.S.C. §§ 4704 (a) and 4705(a). On May 12, 1958, he pleaded guilty to Count One, charging him with the sale of narcotics, and he acknowledged a prior narcotics conviction. The remaining counts of the indictment were dismissed. On May 20, 1958, I sentenced him to twenty years imprisonment and fined him $1,000. 26 U.S.C. § 7237.

On March 1, 1960, Petitioner filed a motion under § 2255 to vacate his judgment of conviction and sentence. He claimed that his plea had been induced by misrepresentations of the consequences of a not guilty plea, that the enhanced penalty for second offenders in narcotics cases was an ex post facto law, and that he was innocent. I denied relief without a hearing. The Court of Appeals affirmed. 287 F.2d 525 (9th Cir. 1961).

Petitioner now claims that his sentence must be vacated because I accepted his guilty plea without telling him, and without his knowing, that a defendant sentenced for violating 26 U.S.C. § 4705 (a) is not eligible for parole. 26 U.S.C. § 7237. He asserts that he pleaded guilty without full knowledge of the consequences of his plea as required by Rule 11, Fed.R.Cr.P. He also asserts that the judgment of conviction and sentence must be vacated because I did not give him an opportunity to speak before imposing sentence. Rule 32(a) (1), Fed. R.Cr.P. A hearing was held on October 8, 1968.

Petitioner was arraigned before me on May 1, 1958. Retained counsel represented him. He waived reading of the indictment and entered pleas of not guilty to each of its twelve counts. Trial was set for May 12, 1958. On that day, the defendant's counsel requested a meeting in chambers. Prospective jurors were already in the courtroom.

---

I. Also known as Wayne Fong.

Petitioner stated that he wanted to withdraw his not guilty plea to Count One and to enter a plea of guilty to that count of the indictment.

I first made certain that petitioner was the person named in the indictment. I read Count One to him. I explained that a buyer of narcotics must furnish the seller a form supplied by the Secretary of the Treasury or his representative. I asked if defendant had received such a form and he said he had not.

I reminded Petitioner that he could be tried by a jury and have the assistance of his attorney. He told me that he was satisfied with his attorney, that he had told his attorney all the facts surrounding the crimes charged in the indictment, and that he had discussed all possible defenses with his attorney.

I asked Petitioner's attorney if he thought Petitioner had any defenses to Count One. He said: "I do not, your Honor; I do not. I would not enter a plea if I thought he had a chance. You know that."

I told Petitioner that "in this court we never accept a plea of guilty as to anyone unless they are guilty, unless they admit that they are guilty." Petitioner said he understood this, and his attorney said, "I told him if there is a chance for us to win we would go in and fight. I'm not backing away from any case. I love a fight anyway."

THE COURT: I know that, but in the Federal Court we have to be sure.

MR. HANNON: I know you are protecting everybody.

THE COURT: We have to be sure that the person understands what he is doing.

I asked Petitioner several times if anyone promised or threatened him. He said no one had. I asked him if he was acquainted "with the fact that under the law the minimum sentence that I can impose upon you is ten years?"

DEFENDANT: Yes, your Honor.

THE COURT: That is because you have been previously convicted of a narcotics charge.

DEFENDANT: Yes, your Honor.

\* \* \* \* \* \*

THE COURT: Now this is what they call a second offense. It has a minimum of ten years. You know that, don't you?

DEFENDANT: Yes, your Honor.

THE COURT: What is the maximum sentence on that?

MR. CARNEY: My recollection is the maximum is 40 years. I can check it.

THE COURT: \* \* \* You have heard what the United States Attorney says, that if I should so desire I could impose a sentence of 40 years on you?

DEFENDANT: Yes, your Honor.

\* \* \* \* \* \*

THE COURT: Solely on the representation that you are guilty and that you know you are guilty, I will accept your plea of guilty, with the understanding that there has been only one promise made, and that is the promise of Mr. Carney that he will move to dismiss Counts II to XII, inclusive.

A short time later, I reiterated that a "plea of guilty carried with it a minimum penalty of ten years" and a "maximum penalty of 40 years." Again I inquired whether the facts stated in Count One were true and Petitioner said they were. Again I made certain that Petitioner and his attorney had reviewed the wording of each count of the indictment.

Petitioner then acknowledged that he was the same person who was previously convicted of a narcotics offense on January 28, 1949, and I informed Petitioner that he was not eligible for probation. I set sentencing for May 20, 1958.

On May 20, after the United States Attorney briefly restated the facts, I asked Petitioner's attorney if he had any-

thing to say. He said he did not. Before imposing sentence, I said: "This type of record * * * calls for a severe sentence, but in imposing sentence I am taking into consideration the severity of the provisions of the Narcotics Act." I sentenced Petitioner to twenty years and fined him $1,000. In doing this, I considered that Petitioner had been a major wholesaler of narcotics on the West Coast for over ten years.

I have restated the facts leading to Petitioner's guilty plea to show the scope of my inquiry before I accepted his change of plea from not guilty to guilty. Trial was imminent; yet Petitioner requested a meeting in chambers so that he could change his plea to guilty. His attorney said "I would not enter a plea if I thought he had a chance." Petitioner knew he could be sentenced to as much as forty years if convicted. It was on his initiative and without prior warning to the Court that on the very day set for trial he asked me to withdraw his prior plea to Count One and accept his plea of guilty. Now he says he did not voluntarily plead guilty because he believed he would be eligible for parole.

Petitioner's motion raises the following issues:

(1) In 1958, did Rule 11 require this Court to inform a defendant desiring to plead guilty of the "consequences" of his plea?

(2) Is a defendant's ineligibility for parole a "consequence" of a guilty plea within the meaning of Rule 11?

(3) If so, was this true in 1958, when Petitioner was sentenced?

(4) Is Petitioner entitled to relief on the particular facts of this case?

In 1958, Rule 11 read, in part:

"The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge."

In 1966, the relevant part of Rule 11 was amended to read:

"The court may refuse to accept a plea of guilty, and shall not accept such a plea * * * without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

The phrase "and the consequences of the plea" was added "to state what clearly is the law." Notes of Advisory Committee on Rules, 18 U.S.C.A. Rule 11 (Supp.1967). Kadwell v. United States, 315 F.2d 667 (9th Cir. 1963); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). I conclude that in 1958 this Court was required to inform Petitioner of the "consequences" of his guilty plea.

Munich v. United States, 337 F. 2d 356 (9th Cir. 1964), was the first case in this Circuit to hold that ineligibility for parole was a "consequence" of a guilty plea within the meaning of Rule 11. In 1958, when Petitioner's guilty plea was accepted, no appellate or lower court decision in any circuit had resolved this issue. Since Petitioner's plea was accepted, two other Circuits have rejected the Ninth Circuit's view. Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963); Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967). I am bound by the decision of the Ninth Circuit, but I do not believe that decision, reached in 1964, controls Petitioner's 1958 plea.

The reasons set forth in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) support a refusal to apply the *Munich* rule to Petitioner's case. In *Stovall* the Court in declining to retroactively apply the new limitations on line-up procedures, said:

"Today's rulings were not foreshadowed in our cases; no court announced such a requirement until *Wade* [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] was decided by the Court of Appeals for the

Fifth Circuit * * *. Law enforcement authorities fairly relied on this virtually unanimous weight of authority, now no longer valid, in conducting pretrial confrontations in the absence of counsel. It is, therefore, very clear that retroactive application of *Wade* and *Gilbert* [Gilbert v. State, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178] 'would seriously disrupt the administration of our criminal laws.'" 388 U.S. at 299–300, 87 S.Ct. at 1971.

The Ninth Circuit cited *Stovall* and *Johnson* when it refused retroactive application to the rule in Heidin v. United States, 353 F.2d 53 (9th Cir. 1965). Castro v. United States, 396 F.2d 345, 349 (9th Cir. 1968). *Heidin* concerns a closely related problem.

In Heidin v. United States, supra, the Court held that a § 2255 motion must be granted if the inquiry required by Rule 11 does not appear on the record made when the plea was accepted. The Court reasoned that a defendant is prejudiced if, years later, he is required to prove or disprove his state of mind when his plea was accepted. In Castro v. United States, supra, the Court declined to apply the *Heidin* rule retroactively. This decision was reaffirmed in Gomez v. United States, 396 F.2d 323 (9th Cir. 1968).

The pre-*Heidin* rule controls Petitioner's case because he entered his plea seven years before the *Heidin* decision. The pre-*Heidin* rule permits the United States to show that notwithstanding the non-compliance with Rule 11, the petitioner in fact "made his plea of guilty voluntarily and with understanding of the nature of the charge." 337 F.2d at 360.

The United States introduced no evidence at the hearing to prove that Petitioner knew his offense was not parolable. Petitioner, who was the sole witness, testified that he did not know this fact when he entered his plea. I do not believe Petitioner, but since the record contains no evidence to the contrary and since the Government has the burden of proof, I must assume Petitioner entered his plea ignorant of the non-parolable nature of his offense.

I do not believe this assumption automatically entitles Petitioner to relief. First, the other facts in this case are distinguishable from those in *Castro, Gomez, Heidin,* and *Munich;* I believe these distinctions demand a different result. Second, the underlying reasons for informing a defendant that he will not be eligible for parole were satisfied by other statements I made to Petitioner before his plea was accepted.

In the present case, Petitioner claims he did not knowingly plead guilty for the single reason that he did not know his offense was not parolable. In *Castro,* the defendant was unaware that he would not be eligible for parole and, in addition, he believed the maximum sentence was six years when it was actually twenty. He received an eight-year sentence. In *Gomez,* the defendant claimed that he did not understand the nature of the charge when he entered his plea and, in addition, that he believed the maximum sentence was ten years; he received twenty. In *Heidin,* the trial court failed to make any of the inquiries required by Rule 11 and, in addition, the defendant, who was sentenced to twenty years, believed the maximum was ten. In *Munich,* the defendant claimed that he did not understand either the nature of the charge or the consequences of the plea, that he pleaded guilty only after he was promised a five-year sentence, and that he was a drug addict when he entered his plea. In addition, the trial court made none of the Rule 11 inquiries; the clerk asked the defendant for his plea.

The facts in the present case differ significantly. Petitioner, on the day set for trial, beseeched this Court to accept his guilty plea to Count One of the indictment. Both Petitioner and his lawyer had carefully reviewed the wording of the indictment and agreed there was no possible defense. It was patently in Petitioner's own self-interest to plead guilty to Count One when the government was ready to try him on twelve counts before

a jury to be selected from a panel already in the courtroom. Finally, I made all the inquiries required by Rule 11 as that rule is now interpreted except that I apparently informed Petitioner that he was not eligible for probation when I intended to say that he was not eligible for parole.

A defendant should be told the maximum sentence permitted by his guilty plea to make certain no one has misled him. He must know exactly what he faces so he can, without threats or promises, intelligently decide whether to put the Government to its burden of proving him guilty beyond a reasonable doubt.

Even though I inadvertently used the word "probation" instead of "parole", these underlying reasons for Rule 11 were satisfied by the numerous other warnings I gave Petitioner and the care I took to make certain that he was guilty of the crime charged against him and that he knew he was guilty of that crime.

If Petitioner did not know of his ineligibility for parole, I do not think this single fact—when compared to the more serious situations in *Castro, Gomez, Heidin,* and *Munich,* and when considered in light of the other inquiries made and the other warnings given Petitioner— vitiates the voluntariness of his guilty plea. I do not believe the holding in *Munich* is retroactive, but if it is, I believe Petitioner's case is distinguishable from the cases requiring a different result.

Petitioner's contention that his sentence must be vacated because I gave his attorney but did not give him a chance to speak before imposing sentence, as required by Rule 32(a) (1), Fed.R.Cr. P. is without merit. In Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L. Ed.2d 417 (1962), the Supreme Court left unanswered "whether § 2255 relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances * * *." 368 U.S. at 429, 82 S.Ct. at 472. I do not find "other aggravating circumstances" here.

Petitioner's motion to vacate his judgment of conviction and sentence under 28 U.S.C. § 2255 is denied. This opinion will serve as findings of fact and conclusions of law under Rule 52(a), Fed.R. Civ.P.