[Crim. No. 14705. Second Dist., Div. Four. Feb. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT PRESTON JAMES, Defendant and Appellant.

Robert Preston James, in pro. per., and Josef Dubiel, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant appeals from the judgment

entered upon his conviction by the court of second degree robbery.

Viewed as is required in the light most favorable to the People, the following facts appear: At about 9:30 p.m. a man approached Sophie Quinn as she was walking on the sidewalk of a well-lit Hollywood business district. He made an insulting comment to her and then struck her, knocking her to the ground. As she looked up she saw the man running off with her purse. She reported the incident to the police and gave them a description of the man.

The next morning she received a call from Officer Slaff asking her to come down to the police station. At the station the officer showed her a number of photographs of Negro men. She picked out the photograph of defendant as the man who robbed her.

After showing Mrs. Quinn the photographs, Officer Slaff left her at the uniform desk and went downstairs into the jail to get a lineup ready. Defendant, who had been arrested at about 10:30 the night before, was seated at an interview table in the jail. Slaff needed six Negroes to put in the lineup with defendant. He discovered, however, that no other Negroes were in the jail at the time. He then returned to tell Mrs. Quinn that the lineup would have to be held at a later date.

In the meantime, while Slaff was downstairs, Mrs. Quinn walked over to the corridor which leads into the jail and, through a one-way mirror which permits a view into the jail, observed defendant seated alone at the interview table. When Slaff returned Mrs. Quinn informed him that she had looked through the window and had seen the person who robbed her.

The next day Mrs. Quinn attended a lineup and picked defendant out of a group of men of the same race and general description. At the trial she positively identified him as the robber.

Officer Slaff interviewed defendant prior to Mrs. Quinn's arrival at the police station on the morning after the robbery. At the time he advised defendant of his constitutional rights (in compliance with *Miranda* requirements). He also told defendant that they were going to have a showup to see if the victim could identify him. He advised defendant that he was entitled to have a lawyer present at the showup. Upon being asked if he wanted a lawyer present, defendant said "No." He stated that he wanted to be shown to the victim so that his innocence could be established.

Since the events above described occurred subsequent to June 12, 1967, defendant was entitled to have counsel present with him at the time. (*People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) The record, however, sufficiently establishes that defendant was advised of and waived such right, and he does not contend otherwise.

█ Rather, it is defendant's position that the requirements of due process were violated because of the unfairness of the identification made when the victim saw him at the interview table through the one-way mirror. The question is whether, as a matter of law, the record shows that the identification ". . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." (*Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].) █ As the court pointed out in *Stovall, supra,* "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, . . ." (388 U.S. at p. 302 [18 L.Ed.2d at p. 1206].)

█ The evidence in this case supports the conclusion that the identification in question was made after the victim had observed defendant quite by accident. Defendant was not shown to her by the police. She had just finished picking his photograph out of a group of photographs of other Negro men. When he was observed, he was sitting alone at an interview table. According to the victim, he was wearing the same clothing he wore when he robbed her the night before. Since no one pointed him out or asked "Is he the one?", no claim can be made of the presence of the influence of any improper suggestion exerted by the police. We conclude that, under the totality of the circumstances presented, the identification did not result in a violation of due process.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 20, 1969.