STOVALL *v.* DENNO, WARDEN.

No. 254.  Argued February 16, 1967.—Decided June 12, 1967.

*Leon B. Polsky* argued the cause and filed briefs for petitioner.

*William Cahn* argued the cause and filed a brief for respondent.

*H. Richard Uviller* argued the cause and filed a brief for the New York State District Attorneys' Association, as *amicus curiae,* urging affirmance.

*Louis J. Lefkowitz,* Attorney General, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Barry Mahoney,* Assistant Attorney General, filed a brief for the Attorney General of New York, as *amicus curiae,* urging affirmance.

Mr. Justice Brennan delivered the opinion of the Court.

This federal habeas corpus proceeding attacks collaterally a state criminal conviction for the same alleged constitutional errors in the admission of allegedly tainted identification evidence that were before us on direct review of the convictions involved in *United States* v. *Wade, ante,* p. 218, and *Gilbert* v. *California, ante,* p. 263. This case therefore provides a vehicle for deciding the extent to which the rules announced in *Wade* and *Gilbert*—requiring the exclusion of identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of his counsel—are to be applied retroactively. See *Linkletter* v. *Walker,* 381 U. S. 618; *Tehan* v. *Shott,* 382 U. S. 406; *Johnson* v. *New Jersey,* 384 U. S. 719.[1] A further question is whether in any event, on the facts of the particular con-

---

[1] Although respondent did not raise the bar of retroactivity, the Attorney General of the State of New York, as *amicus curiae,* extensively briefed the issue of retroactivity and petitioner, in his reply brief, addressed himself to this question. Compare *Mapp* v. *Ohio,* 367 U. S. 643, 646, n. 3.

frontation involved in this case, petitioner was denied due process of law in violation of the Fourteenth Amendment. Cf. *Davis* v. *North Carolina,* 384 U. S. 737.

Dr. Paul Behrendt was stabbed to death in the kitchen of his home in Garden City, Long Island, about midnight August 23, 1961. Dr. Behrendt's wife, also a physician, had followed her husband to the kitchen and jumped at the assailant. He knocked her to the floor and stabbed her 11 times. The police found a shirt on the kitchen floor and keys in a pocket which they traced to petitioner. They arrested him on the afternoon of August 24. An arraignment was promptly held but was postponed until petitioner could retain counsel.

Mrs. Behrendt was hospitalized for major surgery to save her life. The police, without affording petitioner time to retain counsel, arranged with her surgeon to permit them to bring petitioner to her hospital room about noon of August 25, the day after the surgery. Petitioner was handcuffed to one of five police officers who, with two members of the staff of the District Attorney, brought him to the hospital room. Petitioner was the only Negro in the room. Mrs. Behrendt identified him from her hospital bed after being asked by an officer whether he "was the man" and after petitioner repeated at the direction of an officer a "few words for voice identification." None of the witnesses could recall the words that were used. Mrs. Behrendt and the officers testified at the trial to her identification of the petitioner in the hospital room, and she also made an in-court identification of petitioner in the courtroom.

Petitioner was convicted and sentenced to death. The New York Court of Appeals affirmed without opinion. 13 N. Y. 2d 1094, 196 N. E. 2d 65. Petitioner *pro se* sought federal habeas corpus in the District Court for the Southern District of New York. He claimed that among other constitutional rights allegedly denied him

at his trial, the admission of Mrs. Behrendt's identification testimony violated his rights under the Fifth, Sixth, and Fourteenth Amendments because he had been compelled to submit to the hospital room confrontation without the help of counsel and under circumstances which unfairly focused the witness' attention on him as the man believed by the police to be the guilty person. The District Court dismissed the petition after hearing argument on an unrelated claim of an alleged invalid search and seizure. On appeal to the Court of Appeals for the Second Circuit a panel of that court initially reversed the dismissal after reaching the issue of the admissibility of Mrs. Behrendt's identification evidence and holding it inadmissible on the ground that the hospital room identification violated petitioner's constitutional right to the assistance of counsel. The Court of Appeals thereafter heard the case *en banc,* vacated the panel decision, and affirmed the District Court. 355 F. 2d 731. We granted certiorari, 384 U. S. 1000, and set the case for argument with *Wade* and *Gilbert.* We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date. The rulings of *Wade* and *Gilbert* are therefore inapplicable in the present case. We think also that on the facts of this case petitioner was not deprived of due process of law in violation of the Fourteenth Amendment. The judgment of the Court of Appeals is, therefore, affirmed.

## I.

Our recent discussions of the retroactivity of other constitutional rules of criminal procedure make unnecessary any detailed treatment of that question here. *Linkletter* v. *Walker, supra; Tehan* v. *Shott, supra; Johnson* v. *New Jersey, supra.* "These cases establish the principle that in criminal litigation concerning constitutional

claims, 'the Court may in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application' . . . ." *Johnson, supra,* 384 U. S., at 726–727. The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. "[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved." *Johnson, supra,* at 728.

*Wade* and *Gilbert* fashion exclusionary rules to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel. A conviction which rests on a mistaken identification is a gross miscarriage of justice. The *Wade* and *Gilbert* rules are aimed at minimizing that possibility by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial. Does it follow that the rules should be applied retroactively? We do not think so.

It is true that the right to the assistance of counsel has been applied retroactively at stages of the prosecution where denial of the right must almost invariably deny a fair trial, for example, at the trial itself, *Gideon* v. *Wainwright,* 372 U. S. 335, or at some forms of arraignment, *Hamilton* v. *Alabama,* 368 U. S. 52, or on appeal, *Douglas* v. *California,* 372 U. S. 353. "The basic pur-

pose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent." *Tehan* v. *Shott, supra,* at 416. We have also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. See for example *Jackson* v. *Denno,* 378 U. S. 368. Although the *Wade* and *Gilbert* rules also are aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification.evidence, "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree." *Johnson* v. *New Jersey, supra,* at 728–729. The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a "question of probabilities." 384 U. S., at 729. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice.

We have outlined in *Wade* the dangers and unfairness inherent in confrontations for identification. The possibility of unfairness at that point is great, both because of the manner in which confrontations are frequently conducted, and because of the likelihood that the accused will often be precluded from reconstructing what occurred and thereby from obtaining a full hearing on the identification issue at trial. The presence of counsel will significantly promote fairness at the confrontation and a full hearing at trial on the issue of identification. We have, therefore, concluded that the confrontation is a "critical stage," and that counsel is required at all confrontations. It must be recognized, however, that, unlike

cases in which counsel is absent at trial or on appeal, it may confidently be assumed that confrontations for identification can be and often have been conducted in the absence of counsel with scrupulous fairness and without prejudice to the accused at trial. Therefore, while we feel that the exclusionary rules set forth in *Wade* and *Gilbert* are justified by the need to assure the integrity and reliability of our system of justice, they undoubtedly will affect cases in which no unfairness will be present. Of course, we should also assume there have been injustices in the past which could have been averted by having counsel present at the confrontation for identification, just as there are injustices when counsel is absent at trial. But the certainty and frequency with which we can say in the confrontation cases that no injustice occurred differs greatly enough from the cases involving absence of counsel at trial or on appeal to justify treating the situations as different in kind for the purpose of retroactive application, especially in light of the strong countervailing interests outlined below, and because it remains open to all persons to allege and prove, as Stovall attempts to do in this case, that the confrontation resulted in such unfairness that it infringed his right to due process of law. See *Palmer* v. *Peyton,* 359 F. 2d 199 (C. A. 4th Cir. 1966).

The unusual force of the countervailing considerations strengthens our conclusion in favor of prospective application. The law enforcement officials of the Federal Government and of all 50 States have heretofore proceeded on the premise that the Constitution did not require the presence of counsel at pretrial confrontations for identification. Today's rulings were not foreshadowed in our cases; no court announced such a requirement until *Wade* was decided by the Court of Appeals for the Fifth Circuit, 358 F. 2d 557. The overwhelming majority of American courts have always treated the evidence ques-

tion not as one of admissibility but as one of credibility for the jury. Wall, Eye-Witness Identification in Criminal Cases 38. Law enforcement authorities fairly relied on this virtually unanimous weight of authority, now no longer valid, in conducting pretrial confrontations in the absence of counsel. It is, therefore, very clear that retroactive application of *Wade* and *Gilbert* "would seriously disrupt the administration of our criminal laws." *Johnson* v. *New Jersey, supra,* at 731. In *Tehan* v. *Shott, supra,* we thought it persuasive against retroactive application of the no-comment rule of *Griffin* v. *California,* 380 U. S. 609, that such application would have a serious impact on the six States that allowed comment on an accused's failure to take the stand. We said, "To require all of those States now to void the conviction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration." 382 U. S., at 419. That impact is insignificant compared to the impact to be expected from retroactivity of the *Wade* and *Gilbert* rules. At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identification evidence, and whether in any event the admission of the evidence was harmless error. Doubtless, too, inquiry would be handicapped by the unavailability of witnesses and dim memories. We conclude, therefore, that the *Wade* and *Gilbert* rules should not be made retroactive.

We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. We regard the factors of reliance and burden on the administration of justice as entitled to such overriding significance as to make that distinction

unsupportable.[2]  We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confrontations in the absence of their counsel to have the benefit of the rules established in their cases.  That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum.  Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies,[3] and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law,[4] militate against denying Wade and Gilbert the benefit of today's decisions.  Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue.[5]  But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making.

## II.

We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this

---

[2] Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 22 Record of N. Y. C. B. A. 394, 408–411 (1967).

[3] Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L. J. 907, 930–933 (1962).

[4] See Mishkin, Foreword, The Supreme Court 1964 Term, 79 Harv. L. Rev. 56, 60–61 (1965).

[5] See Mishkin, n. 4, *supra,* at 61, n. 23; Bender, The Retroactive Effect of an Overruling Constitutional Decision: *Mapp* v. *Ohio,* 110 U. Pa. L. Rev. 650, 675–678 (1962); Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U. Chi. L. Rev. 719, 764 (1966).

case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. *Palmer* v. *Peyton,* 359 F. 2d 199 (C. A. 4th Cir. 1966). The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.[6] However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative. The Court of Appeals, *en banc,* stated, 355 F. 2d, at 735,

> "Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, 'He is not the man' could have resulted in freedom for Stovall. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station line-up, which Stovall now argues he should have had, was out of the question."

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

MR. JUSTICE DOUGLAS is of the view that the deprivation of the right to counsel in the setting of this case

---

[6] See Wall, Eye-Witness Identification in Criminal Cases 26–40; Paul, Identification of Accused Persons, 12 Austl. L. J. 42, 44 (1938);

should be given retroactive effect as it was in *Gideon* v. *Wainwright,* 372 U. S. 335, and in *Douglas* v. *California,* 372 U. S. 353. And see *Linkletter* v. *Walker,* 381 U. S. 618, 640 (dissenting opinion); *Johnson* v. *New Jersey,* 384 U. S. 719, 736 (dissenting opinion).

MR. JUSTICE FORTAS would reverse and remand for a new trial on the ground that the State's reference at trial to the improper hospital identification violated petitioner's Fourteenth Amendment rights and was prejudicial. He would not reach the question of retroactivity of. *Wade* and *Gilbert.*

MR. JUSTICE WHITE, whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join.

For the reasons stated in my separate opinion in *United States* v. *Wade, ante,* p. 250, I perceive no constitutional error in the identification procedure to which the petitioner was subjected. I concur in the result and in that portion of the Court's opinion which limits application of the new Sixth Amendment rule.

MR. JUSTICE BLACK, dissenting.

In *United States* v. *Wade, ante,* p. 218, and *Gilbert* v. *California, ante,* p. 263, the Court holds that lineup identification testimony should be excluded if it was obtained by exhibiting an accused to identifying witnesses before trial in the absence of his counsel. I concurred in part in those holdings as to out-of-court lineup identification on the ground that the right to counsel is guaranteed in federal courts by the Sixth Amendment and in state courts by the Sixth and Fourteenth Amendments. The first question in this case is whether other defendants, already in prison on

Williams & Hammelmann, Identification Parades, Part I, [1963] Crim. L. Rev. 479, 480–481; Frankfurter, The Case of Sacco and Vanzetti 31–32.

such unconstitutional evidence, shall be accorded the benefit of the rule. In this case the Court holds that the petitioner here, convicted on such unconstitutional evidence, must remain in prison, and that besides Wade and Gilbert, who are "chance beneficiaries," no one can invoke the rule except defendants exhibited in lineups in the future. I dissent from that holding. It keeps people serving sentences who were convicted through the use of unconstitutional evidence. This is sought to be justified on the ground that retroactive application of the holding in *Gilbert* and *Wade* would somehow work a "burden on the administration of justice" and would not serve the Court's purpose "to deter law enforcement authorities." It seems to me that to deny this petitioner and others like him the benefit of the new rule deprives them of a constitutional trial and perpetrates a rank discrimination against them. Once the Court determines what the Constitution says, I do not believe it has the power, by weighing "countervailing interests," to legislate a timetable by which the Constitution's provisions shall become effective. For reasons stated in my dissent in *Linkletter* v. *Walker,* 381 U. S. 618, 640, I would hold that the petitioner here and every other person in jail under convictions based on unconstitutional evidence should be given the advantage of today's newly announced constitutional rules.

The Court goes on, however, to hold that even though its new constitutional rule about the Sixth Amendment's right to counsel cannot help this petitioner, he is nevertheless entitled to a consideration of his claim, "independent of any right to counsel claim," that his identification by one of the victims of the robbery was made under circumstances so "unfair" that he was denied "due process of law" guaranteed by the Fourteenth Amendment. Although the Court finds petitioner's claim without merit, I dissent from its holding that a general

claim of "unfairness" at the lineup is "open to all persons to allege and prove." The term "due process of law" is a direct descendant of Magna Charta's promise of a trial according to the "law of the land" as it has been established by the lawmaking agency, constitutional or legislative. No one has ever been able to point to a word in our constitutional history that shows the Framers ever intended that the Due Process Clause of the Fifth or Fourteenth Amendment was designed to mean any more than that defendants charged with crimes should be entitled to a trial governed by the laws, constitutional and statutory, that are in existence at the time of the commission of the crime and the time of the trial. The concept of due process under which the Court purports to decide this question, however, is that this Court looks at "the totality of the circumstances" of a particular case to determine in its own judgment whether they comport with the Court's notions of decency, fairness, and fundamental justice, and, if so, declares they comport with the Constitution, and, if not, declares they are forbidden by the Constitution. See, e. g., Rochin v. California, 342 U. S. 165. Such a constitutional formula substitutes this Court's judgment of what is right for what the Constitution declares shall be the supreme law of the land. This due process notion proceeds as though our written Constitution, designed to grant limited powers to government, had neutralized its limitations by using the Due Process Clause to authorize this Court to override its written limiting language by substituting the Court's view of what powers the Framers should have granted government. Once again I dissent from any such view of the Constitution. Where accepted, its result is to make this Court not a Constitution-interpreter, but a day-to-day Constitution-maker.

But even if the Due Process Clause could possibly be construed as giving such latitudinarian powers to the

Court, I would still think the Court goes too far in holding that the courts can look at the particular circumstances of each identification lineup to determine at large whether they are too "suggestive and conducive to irreparable mistaken identification" to be constitutional. That result is to freeze as constitutional or as unconstitutional the circumstances of each case, giving the States and the Federal Government no permanent constitutional standards. It also transfers to this Court power to determine what the Constitution should say, instead of performance of its undoubted constitutional power to determine what the Constitution does say. And the result in this particular case is to put into a constitutional mould a rule of evidence which I think is plainly within the constitutional powers of the States in creating and enforcing their own criminal laws. I must say with all deference that for this Court to hold that the Due Process Clause gives it power to bar state introduction of lineup testimony on its notion of fairness, not because it violates some specific constitutional prohibition, is an arbitrary, wholly capricious action.

I would not affirm this case but would reverse and remand for consideration of whether the out-of-court lineup identification of petitioner was, under *Chapman v. California,* 386 U. S. 18, harmless error. If it was not, petitioner is entitled to a new trial because of a denial of the right to counsel guaranteed by the Sixth Amendment which the Fourteenth Amendment makes obligatory on the States.