MURRAY JONES, JR., APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5606

January 29, 1969                    450 P.2d 139

*James D. Santini,* Public Defender, and *Anthony M. Earl,* Deputy Public Defender, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *James L. Buchanan, II,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, MOWBRAY, J.:

A jury found Murray Jones guilty of robbery and rape and two counts of the infamous crime against nature. He was sentenced to 15 years' imprisonment on the robbery charge, and he received life sentences on each of the other three offenses, all sentences to run concurrently.

He has appealed to this court, and he asserts two principal grounds as reversible error: (1) The victims of his assault should have been barred from identifying him during his trial because they had identified him at a police lineup when he was without counsel and his in-court identification by the victims was not of an independent origin, but was based on that police lineup; and (2) the trial judge erred in denying his motion for a mistrial when his father, Murray Jones, Sr., in answer to a question by the prosecution, volunteered information that indicated the appellant was on parole. We find both contentions without merit, and we affirm the guilty verdicts on all four counts.

About midnight on September 4, 1967, Murray Jones broke into a residence in Las Vegas. The home was occupied by a mother and daughter and by a young woman and her son who roomed with the family.

Shortly after midnight the young woman, who had retired earlier, awoke and found Jones at the foot of the bed. She screamed. He brandished a knife and threatened to kill her. Her screams summoned the other members of the household. Jones then ordered the mother, daughter, and the young woman to produce their purses. They did, and he took the contents. He then directed his four hostages into a closet in the bedroom.

He called for the young woman, and after he disrobed her he raped her. He threatened to kill them all if they made any noise or resisted his attacks. After the rape, he summoned the daughter. He disrobed her, and then for the next 45 minutes to an hour forced the two women to engage with him in various sex orgies, two of which were the bases for the charges of the infamous crime against nature.

As the hour wore on, and during one of Jones's unguarded moments, the young woman grabbed his knife and plunged it into his back behind his shoulder blade. He lunged for her, but she managed to escape. She ran from the home and screamed for help. The neighbors responded immediately by calling the police, who arrived soon after Jones had left the home.

1.   On the afternoon of September 5, the two women who had been assaulted identified Jones at a lineup at the City of Las Vegas police station. He was without counsel when they did so. Earlier in the day he had been given the full Miranda warning and had requested counsel. Later, he agreed to the lineup and signed a waiver of his right to counsel for that purpose. The waiver was first read to him and explained by his parole officer; then Jones read it before signing it.

At the commencement of Jones's trial, his counsel advised the court that he would object to the victims' in-court identification of Jones, because Jones was denied his right to counsel during the police lineup, upon which his in-court identification would be based. United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967); and Stovall v. Denno, 388 U.S. 293 (1967).

In Wade, supra, and the companion cases of Gilbert and Stovall, supra, the Supreme Court of the United States has firmly held that a police lineup is a critical stage of the prosecution and that during a lineup a defendant is as much entitled to the aid of counsel as at the trial itself. U.S.C.A. Const. Amends. 6 & 14. And the absence of counsel during the lineup will preclude the witnesses who identified the defendant at the lineup from later identifying him in court.

The reasons for the rule are well set forth by Mr. Justice Brennan, who wrote the majority opinions, in Wade, Gilbert, and Stovall, and it would serve no purpose to restate them in this opinion.

There are, however, certain exceptions. One is that the preclusion will not be enforced if the defendant did make at the time of the lineup an intelligent waiver of his right to counsel. Another is a finding by clear and convincing evidence that the in-court identification is based upon observations of the suspect other than the lineup identification. Wade, at page 241, says: "Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any

discrepancy between any pre-lineup description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."[1]

In Jones's case, when counsel advised the court that he would object to the anticipated in-court identification of Jones by the victims, the trial judge excused the jury and conducted a full and complete evidentiary hearing. Witnesses, including the victims, were sworn, and they testified and were cross-examined. The events leading up to the signing of the waiver by Jones were fully explored. The basis for the victims' identification of Jones was established.

At the conclusion of the evidentiary hearing, the trial judge found that Jones had made an intelligent waiver of his right to counsel during his lineup and that the victims' identification of Jones was of an independent origin and not dependent on the police lineup. The record supports the findings of the trial judge.

2. The prosecution asked Mr. Murray Jones, Sr.:

"Q. Where was he [Jones, Jr.] going . . .?

"A. To Phoenix, Arizona, to see his mother and his sister. So, I says, 'Well, you can't go down.' He says, 'Yes, because my parolee told me I could go.' He knew before he was going and—"

At this juncture, defense counsel moved for a mistrial on the grounds that Mr. Jones, Sr.'s mention of "parolee" was prejudicial error and Jones was entitled to a new trial. The trial judge excused the jury and heard counsel's argument. He denied the motion, and he admonished the jury. There is nothing in the record to indicate the statement was anything but what it appeared to be—a voluntary comment by a witness. Every effort must be made to avoid such remarks, but in this case the remark could not have been anticipated or avoided by the examiner. Nor is there the slightest showing of bad faith on the part of the prosecution. State v. Varga, 66 Nev. 102,

---

[1] The victims in this case observed Jones for almost an hour and at distances at times as close as 6 inches. Can it reasonably be doubted that such a close confrontation with Jones during this period of time and under the facts of this case would etch indelibly Jones's countenance in the minds of the two victims for the remainder of their lives?

205 P.2d 803 (1949). It was permissible for the court to deny the motion for a mistrial.

The judgment is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.