David T. Gibbons, J.
An application was made on behalf of the defendant for a pretrial hearing to determine the propriety of the identification procedures employed by the police with respect to this defendant. (United States v. Wade, 388 U. S. 218; Gilbert v. California, 388 U. S. 263; Stovall v. Denno, 388 U. S. 293.)
Following a hearing on this motion, the court now makes its findings of fact and conclusions of law as follows:
On June 1, 1968, there was a fire in the Elim Lutheran Brethren Church located at 4 Belmont Avenue, Floral Park, New York. In connection with that incident the defendant has been indicted for the crimes of arson in the second degree, burglary in the third degree, and criminal mischief in the second degree.
At about 4:40 a.m. on the morning of that day, Bichard James Vettrus, the pastor of that congregation, went to his church. As he approached the building he saw fire in the chapel area of the church, as well as in the office located behind the entrance foyer. While entering the premises he saw, for the first time, at a distance of about 30 feet, a man whom he identified as the defendant, in the foyer. When the intruder was asked what he was doing there, the latter made no response. As the man kept moving toward pastor Vettrus the distance between them continually lessened until he eventually passed him on a pathway leading from the foyer entrance to the street, and he then ran across the street.
The clergyman observed the intruder for a period of about 15 seconds from the time he first saw him until he ran across the street. During this interval of time the two men were face to face. The observation was made at dawn in the light of the early morning. There was no artificial lighting in the vicinity *810 but the court finds that the area in which the observation was made was amply illuminated. In addition, light was provided by the fire which was burning behind the intruder at the time the pastor first observed him.
On July 17, approximately six weeks after this occurrence, Detective Williams, along with a Fire Marshall, went to see pastor Yettrus at his parsonage. They exhibited to the pastor six photographs of white male individuals. Four consisted of the front and side views of four men, while two portrayed two men standing upright. He was asked to look at the six photographs to see if he could make an identification. From amongst these pictures, pastor Yettrus identified a photograph of the defendant and said it was a picture of the fellow who was in the church on June 1, 1968, but that he would like to see him in person before making a definite identification. Without being advised that he would, in fact, see the defendant in person, the witness on that same day, that is, July 17, 1968, was taken to a courtroom in the County Courthouse of Nassau County. When he entered the courtroom he saw, exclusive of court personnel, about 14 male and 1 female, all white individuals, except for one colored person, dressed in ordinary civilian clothes, in the area in front of the guardrail which separates the spectators from the persons interested in the matters then before the court. Among the 14 people were individuals in their early 20’s and some older. Some people were sitting in the spats facing the bench while about 5 individuals were sitting in the seats on the lefthand side of the courtroom. In addition to being seated together in a part of the court apart from the area occupied by lawyers and spectators, the 5 people seated at the side of the courtroom were in the custody of law enforcement officers at the time. Pastor Yettrus was asked to study the people in the room to see if he could identify the person who was at the church. The witness looked and then, pointing to the defendant, said, “ That’s the fellow that was at the church ”. The detective told him to look carefully so that he would be sure of his identification. The witness again told the detective that that was the fellow. Pastor Yettrus said that the man he pointed out in the" courtroom is the same man whose picture he selected from among six photographs and that he was the same man that he saw in the church at the time of the fire.
Although it may be claimed that what took place in the courtroom was not the equivalent to an organized police lineup, and, therefore, not within the orbit of the Sixth Amendment protection afforded by Wade (supra), the court finds that, although it may appear to be informal, it, nevertheless, was not a chance *811 courthouse encounter. Although the procedure appeared to be without police supervision, they did know where, when, and under what circumstances the accused would be in the company of other persons similarly involved with the law. The net effect of this is that this was just as much a lineup as if it were in the stationhouse.
The court thus holds that the procedure employed by the police is equated with the usual lineup and, therefore, the defendant is entitled to his Sixth Amendment right to counsel at this critical stage (Wade and Gilbert, supra).
Were we in this case concerned with a pre-Wade-Gilbert-Stovall confrontation, then the court would unhesitatingly say that the procedure employed by the police was not unfair and did not violate the defendant’s Fourteenth Amendment due process right (Stovall v. Denno, 388 U. S. 293, supra). However, we are here concerned with a -post-Wade-Gilbert-Stovall confrontation. The defendant, is therefore, entitled to the benefit of counsel when attention has focused on him to the extent that he merits the status of one to be viewed for possible criminal identification.
When he is elevated to that status, then generally any deliberate identification procedure, formal or informal, utilized by the police, without affording the accused an opportunity to be represented by counsel, will result in sanctions to the extent that such pretrial identification will be excluded from the realm of admissible reference on the trial, under section 393-b of the Code of Criminal Procedure. It may result in a prohibition against any in-court identification at the trial. This does not necessarily mean, however, that the in-court identification cannot be made at the trial by the witness, pastor Vettrus, based on his observations of the defendant at the scene of the crime, if the court is satisfied that the proscribed identification did not taint the witness’ in-court identification, and that such in-court identification is based on ample visual observations made at the time the crime was committed.
The court finds that the People have established by clear and convincing evidence that the in-court identification made in the course of this hearing by pastor Vettrus was made on the basis of his observation of the defendant at the Elim Lutheran Brethren Church on the morning of the fire, under adequate lighting conditions and for a sufficient interval of time to impress the image upon his mind. The court also finds that this observation by the witness was untainted by any improper or suggestive procedures employed by law enforcement officers. Neither the pretrial courtroom identification nor the manner in *812 which the photographs were shown to the witness had any detrimental effect upon, nor did they in any way impair, the witness ’ ability to make an identification of the defendant during the course of this trial. (People v. Ballott, 20 N Y 2d 600; People v. Brown, 20 N Y 2d 238.)
The court also finds that the description of the defendant given by the witness immediately following the on-the-scene observation — large, heavily built, looked like a nice guy, good looking, about 20 or thereabouts, dark hair, over six feet tall— is not dissimilar from the defendant as the court was able to observe the picture of the defendant in evidence, and as compared with the defendant sitting in the courtroom, taking into account the possibility of weight loss over a period of time during incarceration.
With regard to the photographs to which reference was made in the course of this hearing for the purpose of determining whether defendant’s constitutional rights were in any way impaired, it is noted that such photographs are generally not admissible on the People’s direct case. (People v. Hagedorny, 272 App. Div. 830; People v. Jennings, 23 A D 2d 621; People v. Cioffi, 1 N Y 2d 70; People v. Coffey, 11 N Y 2d 142.)
In addition, no reference whatever may be made in the first instance by the People to the prior pretrial courtroom identification. However, it is the court’s determination that the defendant may be identified at the trial by the witness, pastor Vettrus.
It is, therefore,
Ordered, that the motion to suppress is granted to the extent that no reference may be made to the prior pretrial courtroom identification of July 17, 1968, or to the photographic identification, and denied to the extent that the defendant may be identified by the witness, pastor Richard James Vettrus, on the trial hereof.