George R. KELLAM, Jr., Petitioner,

v.

J. D. COX, Superintendent, Virginia State Penitentiary (formerly C. C. Peyton).

Civ. A. No. 69–C–29–D.

United States District Court,
W. D. Virginia,
Danville Division.

March 6, 1970.

J. Grady Monday, Stone, Joyce, Worthy & Monday, Martinsville, Va., for petitioner.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, District Judge.

Petitioner seeks relief here by writ of *habeas corpus* from a thirty-five year sentence imposed by the Corporation Court of the City of Martinsville for rape, and a fifteen-year sentence imposed by that court for robbery. Both sentences were imposed September 28, 1967, and were consecutive.

On October 18, 1966, George R. Kellam, Jr., at the point of a knife, robbed two female clerks in the Cloth House in Martinsville and raped one of them. One clerk was slightly cut by the knife petitioner was using.

The victims knew Kellam's mother, and one of them recognized him as a Kellam but not by given name. He was in their immediate company, in intimate contact with them, in broad daylight at about 1:30 p. m., for about a half an hour.

Immediately following the crime, Kellam disappeared from his home for about two months. He returned on December 26, 1966, and was arrested or turned himself in to the Martinsville police, December 27, 1966.

A few days after he was arrested, which would be about the last of December, 1966, the two victims were brought to the jail, where they identified Kellam

as their assailant. No attorney was present at the time, and he was not part of a lineup.

Kellam's preliminary hearing was held December 30, 1966, and after commitment to Southwestern State Hospital, where he was pronounced sane, he was tried in the Corporation Court of the City of Martinsville, September 28, 1967.

He pleaded guilty to the charges of rape and robbery, and after a searching examination by the trial judge, was sentenced.

Kellam assigns as grounds for *habeas corpus* relief (1) Identification by his victims in the Martinsville jail absent an attorney; (2) Ineffective representation of counsel in that (a) his attorney misled him as to his requested change of venue (b) his attorney only conferred with him four times in nine months (c) his plea of guilty was not voluntary because his attorney told him that if he did not plead guilty he would die in the electric chair, and (d) his attorney refused to appeal his case to the Supreme Court of Appeals.

The state court record consists of the transcript in the preliminary hearing examined at petitioner's request, the transcript from the criminal trial, the transcript in the state *habeas corpus* proceeding, and the petition for writ of error from the state *habeas corpus* proceeding. In addition, an evidentiary hearing was held in this court on the matter of ineffective representation of counsel.

■■■ The first ground, that of identification, is without merit for two reasons: First, the defendant pleaded guilty and thus identified himself. Second, the effect of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), is prospective rather than retrospective. *Wade* was decided June 12, 1967. The same day Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), decided that *Wade* and its companion case, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) were prospective in operation. They " * * * affect only

those cases and all future cases which involve *confrontations for identification purposes conducted in the absence of counsel after this date."* 388 U.S. 293, 296, 87 S.Ct. 1967 (Italics added). Compare Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) in which the operation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was held to apply to all *trials* after June 13, 1966, the date of the *Miranda* decision. Thus, even if Kellam's guilty plea were not enough to identify him, the absence of his attorney at an identification in jail during his confinement prior to trial may not be considered here as a denial of his Sixth Amendment rights because the identification took place during the last part of December, 1966, and *Wade* and *Gilbert* only apply to "confrontations * * * conducted" after June 12, 1967.

Concerning the acts of petitioner's attorney as to a change of venue, the facts show that Kellam did discuss with his attorney a change of venue. The attorney then went to the trial judge, telling him that he was making such a motion, and was advised that the court would not consider the matter absent affidavits supporting the motion which is the normal practice in Virginia. Upon trying to obtain the affidavits, the attorney's associate found that the first twenty-five people he asked would not sign an affidavit, many of them not having heard of the matter, and it was properly concluded that the effort was futile. Making the motion, however, did have the desired effect of stopping newspaper publicity which the attorney felt might prejudice the case. The extent of the publicity is not shown in the record, and obviously is of no consequence.

Concerning the allegation that he only consulted with his attorney four times prior to trial, the record shows that petitioner was seen by the attorney and the attorney's associate many, many times prior to the trial. The court is of opinion that the allegation is without foundation in fact whatsoever.

Concerning the allegation that petitioner was coerced into a guilty plea by undue emphasis of his attorney on the death penalty. The trial court in a searching examination determined that the plea was voluntary; that Kellam understood the indictment; that he had been over the indictment with his attorney; that the decision to plead guilty or not guilty was left up to him; that he had a right to trial by jury; that a guilty plea was admitting the charges; that the maximum sentence was understood; that he was satisfied with his attorney; and "THE COURT; Do you understand that the Court will not allow anyone to plead guilty who claims to be innocent? George R. Kellam, Jr.: Yes sir."

In addition, the uncontradicted evidence of Kellam's mother is that he said of the guilty plea "I'd be a damn fool not to take it", and further that "Buddy decided to take it" [in the absence of his attorney], and that the attorney advised Kellam that he had nothing for his defense.

The attorney, who is of twenty years experience, considered this was the most dangerous capital case he had ever tried. He told this to Kellam, and he kept him and his family filled in on what he was doing in the defense of the charges, including the change of venue, which was not referred to in legal or technical terms.

Kellam was advised that both rape and robbery were capital offenses, but there was no undue emphasis on this, and certainly no coercion. Indeed, the attorney would have been remiss in his duty had he not advised his client of the seriousness of the charges and the extent of the penalty.

Whether considered in the context of inefficient representation of counsel or of the voluntariness of the plea, the court is of the opinion that there is no merit to the allegation that the guilty plea was entered as a result of coercive or misleading conversations between the petitioner and his attorney.

Concerning the fact that the case was not appealed, Kellam testified that he asked his attorney to appeal the case immediately after the conviction. He denied that he wrote to anyone asking to get the case appealed. Kellam's stepfather testified that his wife (Kellam's mother) received a letter from her son asking that the case be appealed. He said he went to see the attorney's associate and was told there was nothing that could be done about it. Kellam's mother did not testify. The purported letter from Kellam to his mother was not produced.

The attorney categorically denied that there was any discussion of an appeal with Kellam. The associate denied any recollection that Kellam's stepfather had discussed an appeal, but rather it was his rather detailed memory that the only thing discussed was the matter of Kellam's parole because of a sick wife and small child.

The state court believed both attorneys on this conflicting evidence, as does this court.

■ In conclusion, it is the opinion of the court that Kellam was not denied any constitutional rights. He was ably represented in a most difficult situation by competent and diligent attorneys whom he has badly used in the prosecution of this petition.

Since plea bargaining was not mentioned in the petition, it is not discussed here. Petitioner's contention that the victim's sons had threatened his life is grounds for a change of venue is not worthy of comment.

An order is this day entered dismissing the petition.