Charles **DAVENPORT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43241.

Court of Criminal Appeals of Texas.

Dec. 2, 1970.

Will Gray, Houston (on appeal only), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Ted Hirtz, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

The offense is robbery by assault; the punishment, 20 years.

Trial was before a jury on a plea of not guilty and the jury assessed the punishment.

Judgment was rendered on January 27, 1968, and time for filing motion for new trial was waived; sentence was pronounced and notice of appeal was given the same day.

The record on appeal, accompanied by briefs filed in the trial court, was filed in this court on June 15, 1970.

The indictment alleged the robbery of Edwina Harkins on or about the 26th day of February, 1967.

The state's evidence established that on February 27, 1967, Edwina Harkins and her husband, Doctor Tom Harkins, who were guests at the Golden Key Inn in Harris County, were assaulted and robbed by two armed men. Edwina Harkins identified appellant as one of the robbers. Dr. Harkins died prior to the trial. The second robber was never identified or apprehended.

The defense of alibi was raised by the testimony of appellant and members of his family.

Eight grounds of error are set forth in appellant's brief.

Ground of error No. 1 complains that the state, on cross-examination of appellant, elicited testimony that his parole from a prior conviction had been revoked, such cross-examination not having been invited, and that such cross-examination was highly prejudicial on both the issue of guilt and that of punishment.

On cross-examination appellant admitted four felony convictions. On re-direct he testified that he was finally discharged from the penitentiary on July 7, 1965.

The ground of error relates to the following which occurred during the re-cross-examination of appellant:

"Q. Now, when did you say you were discharged from the Texas State Penitentiary?

"A. July 7th of 1965.

"Q. Well, isn't it a fact that you were paroled in 1964?

"A. That is a fact. Nobody mentioned it. I was discharged on July the 7th of 1965. That is what you asked me and that is what I told you.

"Q. Well, were you paroled?

"A. I have been paroled.

"Q. What happened after you were paroled, if anything?

"A. I went back on a parole violation.

"MR. THURLOW: Judge, we object to this. We think it is immaterial. The various offenses have been pointed out to the jury and this is in violation of our motion in limine and we move for a mistrial.[1]

"THE COURT: That is overruled.

"MR. THURLOW: Note our exception.

"MR. HIRTZ: May I point out to the Court that it goes to his ability to reform, Your Honor.

"MR. THURLOW: That is not the purpose of a hearing like this, Judge. We object to any mention of the word 'parole' and move that it be stricken from the record."

The ground of error reflects no reversible error. Mitchell v. State, Tex.Cr.App., 436 S.W.2d 539.

Ground of error No. 8 also relates to the matter of appellant's having had to return to the penitentiary as a parole violator and complains of the state's argument at the punishment hearing and

1. The motion in limine appearing in the record does not refer to paroles. Prior convictions were first referred to by appellant's counsel on direct examination.

No complaint is made as to the court's ruling sustaining the state's objection to the question after it had been answered.

the statement of the court following the objection: "I believe there is some evidence that he returned, is there not?"

Assuming that the ground of error conforms with the requirements of Art. 40.09 (9) Vernon's Ann.C.C.P., the ground of error is without merit.

■ Ground of error No. 2 relates to the following testimony of the arresting officer Barnett, on his direct examination:

"Q. Do you know the defendant, Charles Davenport?

"A. Yes, sir; I do.

"Q. Did you see him on the 17th of April, 1967?

"A. Yes, sir; I did.

"Q. What did you do with respect to Charles Davenport on that date?

"A. We noticed Charles Davenport standing in a pool hall.

"Q. Where was this pool hall?

"A. Well, it was at the corner of Luell and Arkansas.

"Q. After you saw Charles Davenport standing in front of a pool hall what did you do, Officer?

"A. We went to a telephone and checked the ID Bureau to see if he were wanted on a case at that time.

"Q. Did you learn from your ID department whether or not he was wanted?

"A. Yes, sir; I did.

"Q. State whether or not you learned there was a warrant for his arrest?

"A. Yes, sir. There was a warrant for his arrest on a burglary and also a wanted for robbery by assault."

The court sustained appellant's objection and instructed the jury not to consider the answer of the witness insofar as the burglary was concerned.

Under the record, the trial court did not err in overruling appellant's motion for mistrial because of the unresponsive answer. Franco v. State, Tex.Cr.App., 400 S.W.2d 548; Monasco v. State, 172 Tex. Cr.R. 528, 361 S.W.2d 208; Campbell v. State, Tex.Cr.App., 373 S.W.2d 747.

Ground of error No. 3 complains that the court erred in denying appellant's request to question Mrs. Harkins regarding her in-court identification of appellant, such request being timely made before the witness identified appellant.

Ground of error No. 4 complains that the court erred in admitting Mrs. Harkins' in-court identification of appellant, the contention being that it was based upon a constitutionally invalid lineup held under conditions so unnecessarily suggestive and conducive to irreparable mistaken identity as to constitute a denial of due process of law and the state wholly failed to prove that such in-court identification was not the fruit of the invalid lineup identification.

Ground of error No. 5 presents the contention that the court reversibly erred in failing to rule on the validity of appellant's in-court identification by Mrs. Harkins under the applicable due process standards.

It is conceded that since the lineup occurred prior to the effective dates of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, these authorities do not apply, and that the lineup must be judged by the standards set out in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

■ The question is, considering the totality of the circumstances, was the confrontation or lineup so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process of law in the admission of the in-court identification testimony of Mrs. Harkins.

Later in the morning of the robbery, Dr. and Mrs. Harkins went to the Robbery

Division of the Houston Police Department, where they talked to Detectives Matthews and Peterson, and were separately shown some pictures by these officers. They examined ten or twelve pictures, and Mrs. Harkins recognized one of Charles Davenport. Testimony is conflicting as to whether Dr. Harkins also recognized Davenport.

On April 17th a lineup was held. Mrs. Harkins testified that she was informed by the Robbery Division that "Charles Davenport had been picked up and we came to identify him." There were two lineups with perhaps five men in each.

Five White males, ages 48, 34, 22, including Davenport, age 22, appeared in the lineup. Each man placed himself on a black painted spot on the floor of the showup room, stated his name and age, made four turns, quarter turns, around so the Harkins could plainly see all four sides of them, and then they got back into their positions. Mrs. Harkins positively identified the defendant. Dr. Harkins, who had bad eyesight and had lost his glasses, did not make an identification. Davenport was not asked if he wanted to appear in the lineup, nor was he advised that he had the right to have an attorney present at the lineup.

Applying Stovall v. Denno, supra, to the case at hand, we do not find that defendant was deprived of due process of law. All of the members of the lineup were White males, and three were reasonably close in age. Despite the fact that Mrs. Harkins was aware that Davenport's picture had previously been identified by her, there is nothing here that is necessarily conducive to irreparable mistaken identification.

In addition, Mrs. Harkins made a positive in-court identification of appellant, and she testified that she clearly viewed appellant twice, at a distance of 2 or 3 feet, while he stood in the light. Because she had an opportunity to observe appellant at a close distance, under good lighting conditions, her in-court identification of the appellant was based on clear and convincing evidence and had a foundation independent of the lineup. Giddings v. State, Tex.Cr. App., 438 S.W.2d 805.

The remaining grounds of error reflect no reversible error and require no discussion.

The judgment is affirmed.