THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CARMINE RUSSO, Respondent.

First Department, April 29, 1976

*Judith K. Rubinstein* of counsel *(Peter L. Zimroth* with her on the brief; *Robert M. Morgenthau, District Attorney),* for appellant.

*Stephen Gillers* of counsel *(James E. Siff* with him on the brief; *Warner & Gillers, P.C.,* attorneys), for respondent.

NUNEZ, J. On August 19, 1974, Michael Jones was driving a *Daily News* truck which was hijacked in lower Manhattan. Jones was handcuffed and placed in the rear of the truck which was then driven to the Fulton Fish Market nearby, where a second man entered the cab of the truck. Jones saw the second man's left profile for about 10 seconds as he lay on his side in the back of his truck.

Upon his release, following the removal of a safe from the truck by the perpetrators, Jones spoke to Officer Brian Mulhall at the police station. Mulhall then drove Jones back to the Fulton Fish Market so that Jones could indicate where the truck had been parked. Jones remained in Mulhall's automobile while the officer spoke to a group of men in the area. One of these men was defendant Russo. Mulhall estimated that he and the men to whom he spoke were about 100 yards from Jones; Jones estimated the distance to be about 30 or 35 yards. Upon his return to the car Officer Mulhall asked Jones if he had recognized any of the men he had been speaking to. Jones did not recognize Russo. He testified that he "wasn't paying that much attention to what [Mulhall] was doing," and that he "didn't look, really". However, Jones did say that one of the men (Elia Albanese, later indicted with Russo for the hijacking) to whom Mulhall had been speaking, looked like one of the perpetrators but he was not positive.

Back at the precinct, a police artist drew sketches from Jones' descriptions. One of the artist's sketches was of a man's left profile. Jones thereafter perused groups of photographs.

Out of one group of approximately 30 pictures, Jones selected two, one of which was the right profile of the defendant. Jones told the officer that although the photograph looked "exactly like the number two guy," he preferred to see the man in person since the only features that he had seen were on the left side of his body.

During the next two days Jones looked at many pictures, never in groups of less than 10 or 12 at a time. Jones, for the second time selected a photograph of the defendant's right profile. On August 22, 1974 Jones and Mulhall met at the Fulton Fish Market. As they proceeded through the area, Jones identified Russo as one of the men involved in the crime and his arrest followed.

Holding that Russo's photographic and pretrial identification at the fish market was the product of impermissibly suggestive police procedures, the trial court granted the defendant's motion to suppress all identifications by the complaining witness Jones. We find no factual support for the court's ruling made, incidentally, without setting forth any supporting findings of facts. Jones selected Russo's photograph from a group of 30. No police officer said anything to Jones which would direct his attention to Russo's picture. Jones testified that he had previously examined as many as two or three hundred photographs. He was never shown Russo's photograph alone, nor is there any indication that the police informed Jones or even hinted that Russo was suspected.

The police had a theory that the perpetrators were associated with the Fulton Fish Market because the truck had been taken there in order to remove its safe by using a fork-lift. On August 22, 1974, the day of defendant's identification and arrest, no suspect had been arrested. Jones had been unable to identify a suspect in a bar near the market. Based solely upon his own observations Jones noticed Russo on a fork-lift and walked closer to him to get a better view. When he was within 20 yards of Russo, he identified him as one of the perpetrators.

The issue is whether the police procedures were impermissibly suggestive. This was not a show-up since Russo was never displayed alone to Jones. The trial court's finding that failure to conduct a lineup is indicative that a suggestive rather than an objective identification was sought is not supported by the record. A lineup is not the only proper identification method. (See *Stovall v Denno,* 388 US 293.)

Both the photographic and the pretrial identifications were

proper. It follows that an in-court identification will not be tainted thereby and will be admissible. Whether Jones' identification of Russo will be sufficient to convict is not before us. We pass only on admissibility.

The order entered in Supreme Court, New York County (ASCIONE, J.) on December 20, 1974, granting defendant's suppression motion should be reversed on the law and the facts and the motion denied.

MARKEWICH, J. P., MURPHY, LUPIANO and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County, entered on December 20, 1974, unanimously reversed, on the law and the facts, and the motion denied.