**Gary Wayne CARROLL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–113.**

Court of Criminal Appeals of Oklahoma.

Aug. 19, 1977.

Clarke L. Randall, Appellate Public Defender, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge:

Appellant, Gary Wayne Carroll, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Tulsa County Case Nos. CRF–76–968 and CRF–76–973, on two charges of Robbery With Firearms, in violation of 21 O.S. 1971, § 801. Defendant was sentenced, pursuant to said convictions, to serve five (5) years in the State penitentiary on each charge, said sentences to run concurrently. Each five year sentence was thereafter suspended. From said judgment and sentence defendant has perfected his timely appeal to this Court.

Defendant waived jury trial and was tried to the court. By stipulation, the testimony taken at the preliminary hearing was introduced as the evidence at trial.

The first witness to testify at that preliminary examination was Alma Faye Stanley, the victim of the charge numbered CRF–76–968. She testified that on December 3, 1975, she arrived at Avis Rent-A-Car, her place of employment, at approximately 7:00 a. m. After parking her car in the north lot, she began to walk toward the building when a man stepped from behind a parked car and pointed a small black gun at her and demanded her purse. Startled, the witness raised her hands whereupon the subject grabbed her purse and ran away. The witness identified the defendant in court as the person who had pulled the gun on her and had stolen her purse.

On cross-examination, the witness described the clothing the subject was wearing at the time of the robbery, and also his general appearance. She related that after notifying the police she was questioned by Officer Curtis Hanks. The officer brought several photographs with him for her to examine. After going through several photos she chose one as being a picture of the subject in question. By this time, the witness had learned that another woman, Janet Tinker, also working at Avis, had been robbed that same morning in the same vicinity by a person whose description was almost identical to that given by the witness. Three to four days later the witness and Ms. Tinker were called to police headquarters to attend a lineup. At the lineup the witness positively identified one person as the man who robbed her. She later learned his name to be Hettick. The witness also later learned that Ms. Tinker had identified the same man in the lineup on the same day. However, at the preliminary hearing for Hettick, the witness determined that Hettick was not the correct person because, "he was too big." She later identified the defendant.

Janet Tinker, the victim in case No. CRF–76–973, was the next witness to testify for the State. She stated that on December 3, 1975, at approximately 7:30 a. m., she was walking to Avis Rent-A-Car where she was employed, as she lived only a block away. She testified that a man ran up to her with a gun, demanding her purse. After grabbing her purse the suspect ran across the street and disappeared between two apartment houses. She also identified the defendant in court as the perpetrator of the robbery.

On the afternoon of the robbery she was questioned by Officer Hanks at police headquarters and identified a photograph of a man named Hettick as being the robber. The witness related that she was shown approximately ten different photographs at that time. She stated that Officer Hanks told her, after she identified him, that he was given the picture by another officer because Hettick's brother was in jail, and he knew they were trying to raise bond money. After speaking with Ms. Stanley, the other victim, following this identification, Ms. Tinker determined that they had picked out the same suspect. She also later identified the defendant. The witness was also asked to identify a gun and a jacket which appeared to be similar to that used in the robbery.

Following this testimony the State rested its case, and the defendant's written motion to suppress the in court identification of the defendant by the two State's witnesses was overruled. Defendant's demurrer to the evidence, more properly termed a motion for directed verdict of acquittal, was also denied at that time.

The only witness to testify for the defense was Curtis Hanks, the investigating officer. His testimony was limited solely to his procedures involved in the investigation of the two robberies at issue here. These facts, for the sake of clarity, will be discussed in connection with the defendant's assignment of error.

As defendant's only assignment of error, he asserts that the trial court committed reversible error in failing to suppress his in court identification by the two victims. He contends that the pretrial identification procedures were so unnecessarily suggestive that the in court identification by the victims could not have had an independent source. This assertion by the defendant is well taken.

The United States Supreme Court has held that a pretrial identification procedure which is unnecessarily suggestive and conducive to irreparable mistaken identification may amount to a denial of due process, and thus necessitate suppression of the tainted identification testimony. See, *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and, *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). However, on this issue the Supreme Court stated, in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

> "[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ." (Citations omitted)

In order to determine if the pretrial identification procedures were too suggestive the United States Supreme Court provided a test to apply termed, "the totality of the circumstances" test. Under this approach the pretrial identification procedures followed by police investigators violates due process only if there is a "very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The pretrial procedures, while possibly too suggestive, may not violate due process if there is sufficient indicia of reliability of the identification to show that it had an independent source, aside from pretrial showups or photographic identification. This "totality of the circumstances" test as opposed to the "per se" approach, see *Neil v. Biggers, supra,* at 409 U.S. 198–199, 93 S.Ct. 375, allows courts to

determine on a case by case basis the bona fides of each claimed denial of due process. The reasons for this approach were spelled out recently by the United States Supreme Court in the case of *Manson v. Brathwaite,* —— U.S. ——, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Mr. Justice Blackmun, speaking for the majority, observed that rules of exclusion, such as this test, guard against distortion of a witness' recollection by police as well as providing a deterrent effect to unnecessarily suggestive procedures, whether such procedures are intentional or not. Further, flexible rules of exclusion do not tend to frustrate the administration of justice, which is of primary concern today.

The United State Supreme Court in the case of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), set forth several factors which must be considered in the application of this test to the facts of each case:

> "[F]or example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." (Footnote omitted)

From the language in *United States v. Wade, supra,* a close examination of the identification procedures in the instant case is appropriate at this point. Both victims in the case at bar testified that the incident took only a few seconds, and they both were understandably shaken. The afternoon of the robbery Officer Hanks took an initial description of the assailant, and showed the victims several photographs of individuals. Both victims stated that "at least half" of the photographs fit the general description of the assailant. Both Ms. Stanley and Ms. Tinker positively identified one of the pho-

tographs as being a picture of the man who had robbed them. They were told that the man's name was Hettick. Ms. Stanley testified that she was positive about her identification at that time, however, Ms. Tinker had some doubts, but did not relate them to the officer.

Approximately one week later, on December 10, 1975, the victims were summoned to police headquarters to view a lineup. Of the seven or eight men in the lineup, approximately half of them fit the general description the ladies had given the officer previously. They positively identified the man named Hettick as "the same one [they] selected from the photographs." The women determined that they had chosen the same man in the lineup in their conversation afterward. There was no evidence that Officer Hanks verbally tried to influence their choices in this lineup. The victims attended a preliminary hearing for Hettick approximately two weeks later. No witness could recall any conversation which took place at that preliminary hearing, however, when Hettick appeared in the courtroom both victims stated that at that time they did not think that Hettick was the assailant. Ms. Tinker testified that Officer Hanks told her at the preliminary hearing that he had "some doubts" about Hettick's being involved in the robbery. She stated that this "reinforced" her own doubts.

Thereafter, on January 13, 1976, Officer Hanks called on the victims to view another set of photographs. The officer testified that these were the same photographs shown to them on the day of the robbery, with the addition of one of the defendant. Officer Hanks told them that he was having trouble tying Hettick to the robbery. This time Ms. Stanley identified the defendant as the person who stole her purse. However, Ms. Tinker was not sure of her identification. She told the officer, "if it is anyone, it's him [the defendant]." The officer testified that after Ms. Tinker pulled the pictures of Hettick and the defendant from the others the following transpired:

"Q. On the 13th, now, what was Janet Tinker's—what words did she use after looking at the picture of Hettick and Carroll?

\* \* \* \* \* \* \*

"A. (By the witness) I don't recall the specific words, but the expression was of confusion after having observed both the picture of Mr. Hettick and Mr. Carroll. She expressed at that time that it was entirely possible that Mr. Carroll was the right man and Mr. Hettick was wrong. Our conversation at that point dealt with that area, as I expressed to her that I realized that this is the possibility that existed when it came down to this point of showing these pictures. But, I felt that, due to the other information that I had developed, that I was obligated to proceed in this manner and I had no other way at that point to deal with the situation at hand, and that was the fact that Mr. Hettick was pending trial on a charge that I did not feel that he had committed.

"Q. And you were, by this time, satisfied he had not committed it?

"A. Yes, I was totally convinced at that time.

"Q. Did you express that to her?

"A. After the pictures were shown and she had expressed the confusion over the possibility that she was wrong about Hettick and it appeared to her that there was a good possibility that Carroll was the right man.

"Q. So, then, after showing her the picture of Carroll, you told her that you were convinced that it was not Mr. Hettick?

"A. Yes."

The officer also related that Ms. Stanley had the same problems with her identification of the defendant as did Ms. Tinker. He also conveyed to Ms. Stanley the same doubts about Mr. Hettick which he had conveyed earlier to Ms. Tinker. There is also some testimony that the officer told the victims that there was other evidence implicating the defendant. Thereafter, on May 5, 1976, the defendant was arrested and the next day Ms. Stanley was called to view another lineup, with the defendant included but not Hettick. Ms. Stanley identified the defendant in that lineup; Ms. Tinker viewed photographs of this lineup and chose the defendant as her assailant. However, she again was not certain. These doubts continued, the victims stated, until they saw the defendant in court at the preliminary hearing.

Keeping in mind the analysis enunciated in *United States v. Wade, supra,* several facts in the instant case raise grave doubts as to the reliability of the in court identification of the defendant herein. The prior photographic identification of a third party, Mr. Hettick, while not necessarily rendering the in court identification of the defendant irreparable, does cast doubt upon its reliability. However, this fact, coupled with the procedure by the officer wherein he showed the victims the same photographs they had previously seen with the addition of one photograph, that of the defendant, and further conveying his personal opinion of the guilt or innocence of the subjects, rendered the pre-trial identification so "impermissibly suggestive, as to make them unreliable. It is the position of this Court that the conduct of any pre-trial photographic show-up of suspects should be as reasonably objective and neutral as possible. If there is any evidence in the record that the officer conducting the show-up may have, either intentionally or not, influenced the identification by a victim by referring to other evidence in the case, or in any other manner, this Court will thoroughly review such record on appeal.

From the foregoing facts it is inescapable that the entire atmosphere created by the officer before the preliminary hearing was so impermissibly suggestive as to cast doubt upon its reliability, thereby constituting a violation of the defendant's right of due process of law under the Fourteenth Amendment. Therefore, the judgment and sentence appealed from is, hereby, *REVERSED* with instructions to the trial court that the charges be *DISMISSED.*

BUSSEY, P. J., concurs.