**1040**

UNITED STATES of America ex rel.
William WALKER, Petitioner,

v.

J. T. DEEGAN, Warden, Auburn Prison,
Auburn, New York, Respondent.

No. 70 Civ. 3001 D.N.E.

United States District Court,
S. D. New York.

May 21, 1971.

William Walker, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, by Brenda Soloff, New York City, for respondent.

OPINION

EDELSTEIN, District Judge.

This is a petition for a writ of habeas corpus. Petitioner, William Walker, was convicted on November 8, 1968, after a jury trial in New York State Supreme Court, Bronx County, of the crimes of robbery in the first degree, grand larceny in the third degree, and possession of a weapon, a misdemeanor. Petitioner is presently incarcerated in Auburn Prison, serving an indeterminate term not to exceed fifteen years in prison.

Petitioner attacks his conviction and sentence on the ground that a confrontation that occurred outside his house, conducted without notice to and in the absence of counsel, violated his Sixth and Fourteenth Amendment rights to counsel. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Petitioner also claims that this confrontation denied him due process because it was unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As a result of this confrontation petitioner alleges that the state trial court erred in holding that the in-court identification of him by the complaining witness had a basis independent of the allegedly illegal confrontation conducted outside petitioner's house.

Prior to the commencement of the trial, a hearing was held pursuant to United States v. Wade, *supra*, to deter-

mine the admissibility of the in-court identification testimony to be offered at the trial by the complaining witness, Leo Cavatorta. At this hearing full opportunity was given petitioner's counsel to cross-examine the complaining witness and relevant police officers. All the circumstances affecting the courtroom identification were developed at the trial and considered by the state courts. Petitioner has exhausted his state remedies by raising his contentions in an appeal to the Appellate Division, First Department, and a further appeal to the New York Court of Appeals. The Appellate Division affirmed the conviction without opinion, 33 A.D.2d 893, 306 N.Y.S.2d 878 (1st Dept.) and leave to appeal to the Court of Appeals was denied.

After reading the trial record, the briefs filed in the Appellate Division, the petition for the writ of habeas corpus, and the memorandum of law and affidavit in opposition to the petition, this court is not convinced that the petitioner was denied due process of law or that he did not receive a full, fair and adequate hearing in the state courts. This court determines that the findings of the state court are supported by the record, and no basis is presented by this petition for ordering a new evidentiary hearing. Where a state court has afforded a full and fair hearing to the petitioner on his federal constitutional claims, and where the state court has made reliable findings of fact, the federal court may, and ordinarily should accept the facts as found by the state court. 28 U.S.C. § 2254(d), *as amended* (Supp. V, 1970); Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Fein v. Deegan, 410 F.2d 13, 17 (2d Cir.) *cert. denied* 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969). The petition for a writ of habeas corpus is denied.

The record reveals that around dusk on February 22, 1968, Leo Cavatorta was driving his taxicab south on White Plains Road in the Bronx. The petitioner and his accomplice, Larkin, entered the cab and directed Cavatorta to drive

them to their destination. At their destination Walker drew a gun and took Cavatorta's money and keys. After the robbers fled, Cavatorta called the police and they broadcast a description of the robbers. On the way to the police station Cavatorta and a policeman stopped at the Edenwald Project, in the Bronx, where the police were holding two men who fit the broadcast description. After a close examination of the suspects Cavatorta said these were not the robbers. After arriving at the police station Cavatorta selected the picture of petitioner from among a series of thirty-two pictures. At about 8:00 a. m. the morning after the robbery, Cavatorta went to the police station and from there, in the company of two detectives who used their own cars, to Walker's house. While Cavatorta waited across the street in his cab, the two detectives entered Walker's house and shortly thereafter emerged with Walker. Cavatorta indicated to the detectives that Walker was the man who robbed him. The indication was accomplished by Cavatorta's turning on his headlights, a signal he had arranged with the detectives. The officers did not bring Walker to the cab and Walker and Cavatorta did not speak with each other. Shortly thereafter, upon returning to the police station, Cavatorta identified Walker through a peephole. No line-up was held.

The state trial court, after the preliminary hearing to determine the admissibility of the identification testimony, prohibited the prosecution from making any reference to the peephole identification. The court denied petitioner's motion to have the identification testimony based on the confrontation that occurred outside Walker's house suppressed. The trial court ruled that a peephole identification held in the police station after petitioner's arrest could not be admitted into evidence by the prosecution because it was obtained in violation of Walker's right to counsel under the Sixth and Fourteenth Amendments. See United States v. Wade, *supra*, and Gilbert v. California, *supra*. The court, however,

held that the in-court identification of petitioner was not tainted by the illegal peephole identification because it was based on independent observations Cavatorta was able to make during the course of the robbery.

For purposes of this petition this court does not have to decide if the confrontation that occurred outside of Walker's house was impermissibly suggestive or deprived petitioner of his right to counsel. *Wade* and *Gilbert* do not automatically exclude in-court identifications where the identifying witness has participated in an improper identification procedure. If an illegal identification procedure is used, it is incumbent upon the prosecution to establish by "clear and convincing" evidence, United States v. Wade, 388 U.S. p. 240, 87 S.Ct. 1926, that the in-court identification was based on independent observations of the petitioner other than the illegal identification. What is required is a showing that the in-court identification proceeded from an independent source. Assuming, *arguendo,* that the identification of petitioner as he emerged from his house was in any way improper, it is clear that in the circumstances of this case it did not taint the in-court identification of the complaining witness.

The testimony of Leo Cavatorta, the complaining witness, at the pre-trial hearing provided "clear and convincing evidence," United States v. Wade, at 240, 87 S.Ct. 1926, that his identification of Walker in court was based on his recollection of William Walker from the time of the robbery. Mr. Cavatorta, the complaining witness, testified that at about 7:00 p. m. on February 22, 1968, he was driving his cab south on White Plains Road in the Bronx. As he was approaching 225th Street, he was hailed by the petitioner, William Walker. Walker opened the cab door on the sidewalk side, made a gesture as though summoning somebody and the defendant Michael Larkin appeared. The two men entered the cab. Larkin jumped over Walker to sit directly behind Cavatorta. Walker closed the door and directed Cavatorta to 1316 Needham Avenue, The Bronx. When Cavatorta answered that he did not know where the number was on that street, Walker said that he would direct him. During the ride, which lasted approximately four minutes, Walker questioned the driver about how to open the doors of the cab. As they approached their destination, Cavatorta noticed in the rear view mirror that Larkin started to slump in his seat. When Walker arrived at his destination he asked Cavatorta how much the fare was. Then Walker pulled a gun from his pocket and took Cavatorta's changer, folding money and keys. Cavatorta then summoned the police and an officer arrived within ten minutes.

The trial court at the pre-trial hearing found that Cavatorta had ample opportunity to observe Walker. The court found that Cavatorta was able to see petitioner first as he hailed the cab, as it was just becoming dark and the street lights were on. The cab itself was only about three weeks old and its lights were in operating condition, and when Walker opened the door the lights of the cab came on automatically. Walker held the door open and thus the light was on during the time when he was awaiting Larkin's approach to the cab. During the ride the driver had the opportunity to look through an extra large rear view mirror and to see his passengers, as there was no divider between the front and back seats. The robbery itself did not begin until the cab had come to a stop and at that point the door of the cab was open and all the lights were working. It is clear beyond a reasonable doubt that the courtroom identification of Walker was based on Cavatorta's observation of him during the course of the robbery and the subsequent photographic identification, and not dependent on the confrontation that occurred the morning after the robbery outside Walker's house.

Accordingly, the petition for a writ of habeas corpus is denied.

So ordered.