488 P.2d 971

**The STATE of Arizona, Appellee,**

v.

**Charles Edward McCLURE, Appellant.**

**No. 2109.**

Supreme Court of Arizona,
In Division.

Sept. 23, 1971.

Gary K. Nelson, Atty. Gen., by Charles Stoddard, Asst. Atty. Gen., Phoenix, for appellee.

Leslie L. Miller, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

In 1966, defendant was found guilty by a jury and sentenced to not less than ten nor more than twenty years for armed robbery. We granted this delayed appeal in which he presents two questions.

■ First, he urges that the lineup conducted by the Phoenix police department on the day following the robbery was unduly suggestive and tainted the in-court identification. Since the lineup took place on October 29, 1965, the procedures are not governed by Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. Both of these cases were decided in 1967. Wade and Gilbert were held not to be retroactive in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Defendant cites to the decision in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402, wherein it is stated that although Wade and Gilbert would not be applied retroactively, yet:

"* * * judged by the 'totality of the circumstances', the conduct of identification procedures may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law."

We do not find that this is the case here. The interrogation of one of the two service station attendants is illustrative of the evidence upon which the defendant relies as demonstrating that the totality of circumstances was a deprivation of due process:

"Q. Did they ask you to come down and view a suspect that they had?

A. Yes.

Q. Did they say that they had the man and they wanted you to identify him?

A. Well they said they wanted to take us to a line-up. They thought one of the men in the line-up was him, you know.

Q. Is it a fact, Mr. Patton, that you went down to the police station with the knowledge in mind that they had a suspect that you viewed the line-up with the knowledge that the suspect was in the line-up and that you were to pick him out of the line-up?

A. Yes.

Q. Were you talking to the officers about the man?

A. Not particularly about the man. They just told us they were going to have some men in there, and we were supposed to pick out if our man—the man that robbed us was there we was supposed to pick him out.

Q. Did they call you and tell you they had a suspect?

A. Yes.

Q. Mr. Zahn, isn't it true that you went down to the police station on Friday with the idea in mind that he had a suspect for you to identify, and isn't it true, sir, that you then went to the window to pick the suspect out of a line-up?

A. Yes."

■ We see no reason why the police should not suggest that they have a man whom they suspect of being the guilty party. Anyone called to witness a lineup would naturally assume so. He would hardly be summoned to a lineup if there were no suspect. Hence, we do not find this circumstance unduly suggestive.

We think that when a defendant examines the "totality of the circumstances" he must examine all of them. The record also shows that scrupulous care was taken by the police to see that each victim viewed the lineup and made his decision out of the presence of the other and that the service station customer who testified as a witness and identified the defendant at the trial did not witness the lineup at all. This customer testified that the defendant was

looking at him most of the time during the robbery. Another witness testified that he could see defendant clearly during the robbery. He was also able to pick defendant out of a lineup of five men. Yet another witness testified that he took a real good look at defendant during the robbery and recognized him in the lineup "right away." The lineup consisted of four or five white males whose characteristics (height, weight, etc.) were as close to defendant's as the police could readily obtain, and no pictures were shown to the witnesses prior to the lineup.

We are of the opinion that beyond a reasonable doubt the lineup was fairly conducted and the totality of the circumstances was not unduly suggestive.

Defendant's second point is that certain pre-trial admissions were improperly received in evidence. The facts on which this is based are as follows. Defendant was arrested because he was drunk and unconscious. Nearby was a two-tone, 1955 or 1956 Pontiac with a California license plate. The lower portion of the driver's door had vomit on the inside surface. Defendant was taken to jail and his car was locked and left where it was found. Police Officer Richard Thompson testified that later the same day he had a conversation with defendant at the Phoenix police station, and a little later had another conversation with defendant at the Mesa police station. At the trial, the jury was excused and a hearing as to the voluntariness of defendant's statement was held in the judge's chambers. Officer Thompson testified that he first advised defendant of his right to counsel, of the facts that he didn't have to give any statement and that anything he did say would be used against him in a court of law. He was permitted to make a phone call and to have a drink of water, after which Thompson asked him whether he was the driver of the Pontiac, and he said that he was. He was also asked whether his brother (who was part owner) also drove the car, and defendant stated, "I'm the only one that drives the car," and, "I'm the only one that used it in three days." No promises were made and no duress proved or claimed. The trial judge made a finding that the admissions had been made voluntarily. The testimony was then repeated to the jury.

We hold that the finding of voluntariness is supported by sufficient evidence and that the admissions were properly received in evidence.

Judgment affirmed.

HAYS, V. C. J., and UDALL, J., concur.