## CIRCUIT COURT OF SHENANDOAH COUNTY

Commonwealth of Virginia

v.

Gary Reuben Proctor

August 4, 1981

Case Nos. 1079 and 1080

BY JUDGE HENRY H. WHITING

In this case, the defendant has moved to suppress the photographic identification on the ground that it was "so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377 at 384, 19 L. Ed. 2d 1253 (1968). As defendant suggests, the procedure must have been so suggestive as to violate defendant's due process rights but requires the Court to look at "the totality of the circumstances surrounding [the identification]." *Stovall v. Denno*, 388 U.S. 293 at 302, 18 L. Ed. 2d 1199 at 1206 (1967). While the selection of the photographs proffered certainly was limited and somewhat suggestive, and it would have been better had the officer presented a photographic array, including "so far as practicable . . . a reasonable number of persons similar to [the accused] whose likeness is included in the array," 432 U.S. at 117, 53 L. Ed. 2d 155, that defect, "if there be one, goes to the weight and not to substance." *Id.* This proffered identification was certainly not as suggestive as was the identification criticized (*one* photograph) in the above language of Mr. Justice Blackmun in *Manson v. Braithwaite*, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). In the language of the above case, it certainly met all the constitutional tests enunciated in that case and in the earlier case of *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

In this case, while there was only one other photograph of a young man with a mustache, which the defendant had at the time of the alleged crime, and that other young man had different colored hair, the

Court is unable to conclude that the absence of a mustache on the other five photographs and the dissimilarity of the hair of the one young white male rendered the photographs unconstitutionally suggestive but merely affected the weight of the evidence of identification, as Justice Blackmun has said in *Manson*.

In *Manson*, only one photograph was shown and the identification was not held to have been too suggestive, although it was criticized. The totality of the circumstances, including the rather careful and accurate description of the defendant and length of time the witness had seen the defendant and the other circumstances, persuaded the Supreme Court that the display of only one photograph was not so suggestive as to violate defendant's due process rights because the other indicia of identification possessed sufficient aspects of reliability. 432 U.S. at 106, 53 L. Ed. 2d at 149. That same situation exists here. The witness had seen the defendant on at least three occasions, two of which were a matter of three to five minutes, and all three involved ample opportunity to observe the defendant. That observation was confirmed by her accurate description of the young man to the police shortly after she had seen him on the last occasion. Based on *Manson*, the Court denies the motion to suppress the photographs themselves and will permit testimony as to identification of the defendant by the photographs but will require the other photographs to be produced to permit the defendant to attack the weight of such evidence.

On the second issue, since the photographic display was held not impermissively suggestive, the Commonwealth will obviously be permitted to introduce evidence as to the pre- and post-photographic identifications as well. While not necessary to this decision, if the Commonwealth should decide not to take the chance on using the photographs, the Court feels that the identification is sufficient without the photographs. Even if the photographs were tainted and inadmissible, if the witnesses have had sufficient independent opportunity to observe the defendant and to make accurate identification, such identification is permitted. That was the express holding in *Simmons*, where the government did not use the photographs but relied on in-court identifications which the defendant said were tainted because the product of suggestive photographs. Justice Harlan, in holding the testimony admissible, said:

> In the second place, there was in the circumstances of this case little chance that the procedure utilized led to misidenti-

fication of Simmons. The robbery took place in the afternoon in a well-lighted bank . . . . Five bank employees had been able to see the robber later identified as Simmons for periods ranging up to five minutes. Those witnesses were shown the photographs only a day later, while their memories were still fresh. 390 U.S. at 385, 19 L. Ed. 2d 1254.

Specifically, applying the five tests enunciated in *Biggers* and repeated in *Manson v. Braithwaite, supra*, we measure the witness' testimony:

(1) The opportunity to view. The witness saw the accused on three occasions, twice for more than two or three minutes, and conversed with him in sufficient light to observe him carefully.

(2) The degree of attention. The witness was waiting on the accused as a customer and said she looked at him as she talked to him.

(3) The accuracy of the description. Except for being off one or two years in her estimate of his age, the witness was remarkably close in her description of the accused.

(4) The witness' level of certainty. The witness was absolutely unequivocal in saying the accused was the "man."

(5) The time between the crime and the confrontation. While the first confrontation was in early January, the third confrontation was in March, and it was only a short time thereafter that the accused was identified in the photographic display.

While the witness' conversations with the accused in the second and third encounters seem unusual in her matter-of-fact attitude and in her offering change to the accused after one of the purchases, all of that merely goes to the weight of her testimony but does not suggest a possibility of a misidentification so far off the mark as to be constitutionally impermissive.