Filed 6/19/13  In re Jerome G. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JEROME G., a Person Coming Under the Juvenile Court Law. | B240407 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEROME G.,<br><br>        Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No. JJ18773) |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Quigley Groman, Judge.  Affirmed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jerome G. appeals from an order sustaining a petition under Welfare and Institutions Code section 602[1] and placing him home on probation. He contends the victim's identification of him was the result of an unconstitutionally suggestive procedure, and should not have been admitted at trial. In the absence of other evidence connecting him to the crime, he claims the error was prejudicial and the order should be reversed. We find no error and affirm the court's order.

## FACTUAL AND PROCEDURAL SUMMARY

In November 2011, Guadalupe Reyes was in front of her apartment building, feeding some birds. As she was going back into her apartment, an African American male came toward her. She moved over a little so he could pass. As he passed, he grabbed a gold chain from around her neck. Ms. Reyes held onto the chain, but it broke, leaving her with a small piece in her hand. The man also took an earring from Ms. Reyes's ear.

Los Angeles Police Officer Manuel Castaneda was one of the officers assigned to this case. During his investigation, he reviewed video evidence which showed Ms. Reyes being attacked. About a week after the incident, he went to Ms. Reyes's apartment and drove her to the Southeast Police Station for a field identification. Appellant, then 17 years old, was standing outside the east door of the station. He was handcuffed. According to Officer Castaneda, Ms. Reyes looked out of the car window and said, in Spanish, "It's him. It's him. It's him." Then she ducked down and hid behind the driver's seat of the car.

A petition was filed alleging that appellant came within the provisions of section 602 based on his commission of a second degree robbery in violation of Penal Code section 211. At the adjudication hearing, Ms. Reyes testified that when the officers came to her apartment, they told her they had arrested a person who might have attacked her, and they wanted her to make an identification. The officers told her they had recovered a video depicting the attack, but she did not watch the video. She said she identified

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

appellant because she actually recognized him, not based on anything the officers said to her. Ms. Reyes identified appellant in court as the male who had taken her gold chain and earring and as the person she identified at the police station.

Appellant challenged the admissibility of the identification, claiming the field identification was impermissibly suggestive. The court heard testimony on the issue, rejected that claim, and found the allegation true based on Ms. Reyes's testimony. The petition was sustained, and appellant filed this timely appeal.

## DISCUSSION

Appellant claims the identification procedure was unconstitutionally suggestive, requiring reversal. "In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.) "We review deferentially the trial court's findings of historical fact, especially those that turn on credibility determinations, but we independently review the trial court's ruling regarding whether, under those facts, a pretrial identification procedure was unduly suggestive." (*People v. Gonzalez* (2006) 38 Cal.4th 932, 943.)

Appellant argues the identification procedure was impermissibly suggestive in part because he was the sole suspect standing in handcuffs outside the police station. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." (*Stovall v. Denno* (1967) 388 U.S. 293, 302, overruled on another ground in *Griffith v. Kentucky* (1987) 479 U.S. 314, 321-322; see also *United States v. Wade* (1967) 388 U.S. 218, 234.) However, a one-person showup is not necessarily inherently unfair. (*People v. Ochoa* (1998) 19 Cal.4th 353,

3

413.) For example, in *People v. Floyd* (1970) 1 Cal.3d 694, 714 (overruled on other grounds in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36), the victim was brought to the jail soon after the suspect was arrested, and within several hours of the crime. The court rejected the claim that this was improperly suggestive: "[t]he police are not to be criticized because they attempted to establish an affirmative identification as promptly as possible." In this case, appellant was taken into custody at 4:20 p.m. on December 7, 2011, just a week after the crime. The field showup was later that same day, and appellant was arrested after being identified by Ms. Reyes. Appellant and the police stood to benefit from this prompt confrontation, which could have exonerated appellant and informed the police that their investigation was not at an end. (See *People v. Floyd*, *supra*, at p. 714.)

Appellant further claims the police officers tainted the identification because they told the victim they had viewed the incident on video and then asked her to identify appellant. Ms. Reyes's testimony was conflicting. She testified that the police told her they had seen video footage of the attack and had arrested someone they thought might be her attacker; she also testified that the police "just said to me there was a person there and if I could go and identify him." Asked if they told her they were going to show her the person who robbed her, she replied, "No, they said that I had to see that person."

Officer Castaneda denied telling Ms. Reyes the police believed the person they had in custody was responsible for the attack. He was not asked whether he talked with her about the video. The trial court apparently credited the officer's testimony and concluded the identification was not tainted by any suggestion that the officers believed this was the person they saw in the video. We defer to that factual determination.

Other factors strongly support the reliability of the identification. Ms. Reyes testified that she did not identify appellant based on anything the officers told her; she actually recognized appellant. She believed the attack lasted two or three minutes. She did not recall trying to strike appellant, but instead just stood there and stared at his face for about a minute. She thought she might have seen appellant walking in the same area on a couple of occasions prior to the offense.

4

During the field showup, Ms. Reyes was unequivocal in her identification. When she saw appellant, she told the officer it was him. She then ducked down and hid behind the driver's seat of the car. She also was certain when she identified appellant in court.

The record supports the conclusion that the identification was reliable, based on the witness's opportunity to view appellant and her attention to his appearance during the robbery, the level of certainty she showed at the time of the field identification, and the fact that the identification occurred just a week after the crime.

Evidence of the field identification was not impermissibly suggestive, and it was properly considered by the court. That identification, in combination with the in-court identification, amply supports the court's order.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.

5