[Cite as *In re J.K.*, 2013-Ohio-4938.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: J.K. | : | APPEAL NO. C-120857<br>TRIAL NO. 11-6382z |
| | : | |
| | : | *O P I N I O N.* |

Civil Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 8, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Appellant,

*Gordon G. Magella*, for Appellee.

Please note: this case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Presiding Judge.**

{¶1}   The state of Ohio appeals the juvenile court's judgment dismissing this case against J.K., a juvenile, who was charged with committing an act that would be a robbery offense if committed by an adult.  Because the dismissal was improper as a matter of law, we reverse the court's judgment and remand this case for further proceedings.

### *No Delays Were Precipitated by the State*

{¶2}   On July 1, 2011, J.K. was arrested for robbing another child on the previous day.  He was released and ordered to appear in the Hamilton County Juvenile Court on July 28, 2011.

{¶3}   On July 28, 2011, J.K. entered a plea of denial and filed a request for discovery pursuant to Juv.R. 24.  He was ordered to appear on August 25, 2011, for trial.

{¶4}   On August 11, 2011, the state filed a request for discovery as well as its response to the discovery request by the defense.  The state's response to the request included witnesses' names and their expected testimony.  In addition, the state provided a recording of J.K's oral statement to police, wherein he admitted to robbing the victim, a boy named David, whom he knew from his neighborhood.

{¶5}   On August 24, 2011, defense counsel filed a motion to compel discovery pursuant to Juv.R. 24(B), which allows a party to apply to the court for a written order granting the discovery if "a request for discovery has been made and refused."  In its motion, the defense asserted that the state had failed to provide "any and all police reports and supplements, and any written summary or statement of or by any witness (including police officers) or alleged victim except that which is work product of counsel."  The defense had not asked for those materials in its initial discovery request.

{¶6}   On August 25, 2011, a magistrate of the juvenile court held a hearing on the defense motion.  At that time, the defense acknowledged that the state had provided a "527" (arrest and investigation) police report.  The defense argued, though, that it was also entitled to a "301" police (incident) report.  The state argued that the 301 report was not discoverable.

{¶7}   At the hearing, defense counsel examined Cincinnati Police Detective Longworth, who had been assigned to investigate the robbery in this case.  He testified that he had received a 301 incident report prepared by Cincinnati Police Officer Mayhams, who had responded to the victim's complaint.  The detective testified that the information in such a report may come from a number of sources, and not necessarily from the victim.

{¶8}   The detective testified that he had interviewed the victim, who had assisted him in identifying J.K.  Shortly thereafter, J.K. was arrested and interviewed, and then charged with robbery.  The detective testified that he had prepared the 527 arrest and investigation report.

{¶9}   Although Officer Mayhams, who had prepared the 301 report, was present at the hearing, defense counsel declined to call him in support of the motion to compel.  The magistrate continued the hearing on the motion for two weeks so that the parties could submit memoranda in support of their positions.

{¶10}  On September 8, 2011, the magistrate issued an order finding that the 301 report was discoverable because it would have been discoverable under Crim.R. 16, had the defendant been an adult.  The state filed a timely motion to set aside the magistrate's order, pursuant to Juv.R. 40(D)(2)(b).

{¶11}  On October 25, 2011, a visiting judge heard arguments on the state's motion and continued the matter several times for a ruling.  The judge allowed J.K. to remain at home in the interim.

{¶12} On November 28, 2011, the visiting judge again continued the case for a ruling on the motion. The judge noted that J.K. was being held in detention for other charges, and that J.K. was "not being held on the [r]obbery charge at this time."

{¶13} On January 19, 2012, the visiting judge issued a ruling on the state's motion to set aside the magistrate's order. Initially, the judge noted that "the defendant never responded in any way to the state's reciprocal discovery request." In ruling on the motion, the judge rejected the magistrate's determination that the entire 301 report was discoverable, but adopted the magistrate's order that the defense was entitled to any transcriptions or summaries of oral statements of the defendant or witnesses. In doing so, the judge noted that "the oral statement must be attributed to a party or witness." The judge concluded by modifying the magistrate's order to provide that "the state may redact portions of the police officer notes or reports that are not transcriptions or summaries of the defendant or witnesses." The judge continued the matter "for completion of discovery" and for a pretrial hearing before a magistrate.

{¶14} At a pretrial hearing on February 2, 2012, the state informed the magistrate that its discovery response was complete and that the 301 report did not include statements or summaries of statements attributable to a particular witness. The magistrate's order from that hearing stated that if the 301 report had been "based solely on police interviews[,] * * * that report is discoverable, whether the witness is named or not." At the request of defense counsel, the magistrate continued the case for another pretrial hearing.

{¶15} Before the February 9, 2012, pretrial hearing, the state provided the defense with a redacted copy of the 301 report. According to the state, the redacted information in the report did not include names of witnesses. The magistrate's order from that hearing reflected that the defense was satisfied that discovery had been completed. The magistrate continued the matter to March 8, 2012, for trial.

### *The Defense Filed a Baseless Motion in Limine*

{¶16} Two days before trial, the defense filed a motion to suppress J.K.'s statements to police, as well as a motion in limine to prohibit an in-court identification of J.K. by the robbery victim. The motion in limine alleged that the identification of J.K. at trial "would have no independent basis, would be unnecessarily suggestive, and would be conducive to irreparable mistaken identification." The motion alleged that the victim, David, had been robbed "by several unknown suspects. No other description was provided by David. [J.K.] was not an unknown person to David" on the date of the offense. The defense later supplemented its motion in limine to allege that the only description of the suspects provided by David was "male black," and that "Detective Longworth drove David around to look for suspects; [J.K.] was pointed out and arrested."

{¶17} In support of its motion, defense counsel cited a series of decisions of the United States Supreme Court that involved identification procedures used by law enforcement officers. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In that line of cases, the Supreme Court established that due-process concerns are not implicated unless law enforcement officers use an identification procedure that is suggestive as well as unnecessary. *See Manson* at 109; *Biggers* at 198. And even if law enforcement officers use an unnecessarily suggestive procedure, suppression of the tainted identification is not automatic. *Manson* at 112-113; *Biggers* at 198-199.

> Reliability is the linchpin in determining the admissibility of identification testimony * * *. The factors to be considered are set out in *Biggers,* 409 U.S., at 199-200. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his

prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson* at 114.

{¶18} In this case, though, J.K.'s motion in limine to prohibit the victim's in-court identification of J.K. was *not* based on an allegation of improper police identification procedures. Rather, the defense motion argued that, in J.K.'s case,

the situation is even more suggestive than a 'show-up' identification prior to trial. In this Juvenile court case, [J.K.] will be the only juvenile in the room and will be seated at the defense table, indicating that he is the person who is on trial for the offense. Any in-court identification of [J.K.] without an independent basis is highly prejudicial and places the defendant in a highly suggestive situation. To prevent this miscarriage of justice, defense moves the court to prohibit testimony at trial regarding the identity of the defendant as the offender.

{¶19} The defense did not argue that there had been an improperly suggestive pretrial identification procedure used by the police. Indeed, the defense acknowledged that the victim *had known J.K.* before the offense took place. Despite the independent out-of-court identification, the defense claimed that an in-trial identification of J.K. by the victim would be tainted because the placement of J.K. at the defense table would be too highly suggestive.

{¶20} There was no factual basis for the defense challenge to the victim's in-court identification of J.K. because, as the defense acknowledged, the boys *knew each other*. Moreover, there was no constitutional basis upon which to challenge the in-court identification because there was no allegation that the identification had resulted from an improper police procedure. *See Perry v. New Hampshire*, ____ U.S. ____, 132 S.Ct. 716, 721,

181 L.Ed.2d 694 (2012) (the United States Supreme Court flatly rejected an attempt to extend the judicial inquiry into the reliability of eyewitness identification to situations where the identification was not procured *by improper law enforcement activity*). (Emphasis added.)

### *The State Did Not Commit a Discovery Violation*

{¶21} On March 8, 2012, the magistrate conducted a hearing on the motion to suppress. The magistrate took the motion under consideration and continued the trial date until April 5, 2012.

{¶22} On April 5, 2012, the magistrate rescheduled the trial date for May 10, 2012.

{¶23} On May 10, 2012, the magistrate indicated that a ruling on the motion to suppress was still pending. The magistrate rescheduled the trial date to June 11, 2012.

{¶24} On June 11, 2012, the magistrate denied the motion to suppress and conducted a hearing on the motion in limine. At the hearing, Officer Mayhams testified that he had spoken to the victim and to the victim's father. The victim told him that he had been "approached by a few guys that * * * he [had] seen in the neighborhood before." The officer testified that the redacted portion of the 301 may have contained further descriptions of the suspects.

{¶25} Detective Longworth testified that the victim had told him that he thought he knew where the suspects would be because they were people he had seen in his neighborhood. According to the detective, the victim knew who J.K. was, but he did not know him by name. When asked about the 301 report prepared by Officer Mayhams, the detective answered that the unredacted report contained more suspect information than the redacted report.

{¶26} At that point, even though J.K. and the victim knew each other at the time of the attack, defense counsel argued that she had not been provided all of the suspect information. The magistrate's order from the hearing stated that

> Defendant sought to preclude the State from having an in court identification of him made in the absence of an independently based identification made by someone outside of court. At the crux of Defendant's objection is an allegation that the State failed to comply with a discovery request by providing him with a redacted 301 Report on which information to which he was entitled was missing.

{¶27} The magistrate said that, "Specifically, the State had previously claimed that the 301 Report in question did not include the names of any witnesses or their statements. The testimony of Detective Longworth today was to the contrary, to wit: 'there was a suspect description that's now redacted that I had available to me at the time.' " The magistrate granted the motion in limine. In the entry, he noted that the state had offered the *unredacted* 301 report to defense counsel.

{¶28} The state filed a timely objection to the magistrate's order.

{¶29} On July 30, 2012, a juvenile court judge held a hearing on the state's objection. Defense counsel asked the judge to dismiss the case, alleging that the state had violated its discovery obligation. The court told defense counsel to put her motion in writing.

{¶30} The court did not issue a ruling on the defense motion until December 3, 2012. At that time, the court found that the state had failed to comply with the rules of discovery and that it had disregarded the order of the visiting judge. The court dismissed the state's case with prejudice. The state now appeals.

*The Appeal*

{¶31}  In three assignments of error, the state argues that the trial court erred by (1) ruling that the state was required to provide J.K. with an unredacted "301" police report under Juv.R. 24 and Crim.R. 16; (2) imposing "the harshest sanction of dismissal" for its alleged discovery violation; and (3) ruling that J.K.'s constitutional right to a speedy trial was violated.

*The State Gave the Defense an Unredacted 301 Report*

{¶32}  In its first assignment of error, the state argues that the trial court abused its discretion when it ruled that the state was required to provide J.K. with the unredacted 301 report under Juv.R. 24 and Crim.R. 16.

{¶33}  We do not address this issue because it is moot.  Six months *before* the trial court issued the challenged ruling, the state had provided J.K. with an unredacted 301 report in discovery.  Consequently, even if Juv.R. 24 and Crim.R. 16 had compelled the production of the unredacted report, the state had fully complied with those rules.  We overrule the first assignment of error solely because it is moot.

*No Sanction Because No Discovery Violation*

{¶34}  In its second assignment of error, the state argues that the trial court abused its discretion by imposing the harshest sanction of dismissal, upon its determination that the state had violated the rules of discovery.  We agree with the state.  The court's sanction was improperly imposed in the first instance because there had been no discovery violation.

{¶35}  In this case, the trial court's dismissal was based upon its finding that the state had "repeatedly" failed to comply with discovery and had disregarded the order of the visiting judge.  However, these findings are simply not supported by the record.  The state timely complied with the order of the visiting judge by providing a redacted copy of the 301

report. Although the defense complained that the redacted portions of the report contained discoverable information, no evidence was presented to establish that those portions contained any information that the visiting judge had ordered the state to turn over.

{¶36} Moreover, well before the defense moved to dismiss the robbery charge on the ground that the state had not complied with the order of the visiting judge, the state had arguably exceeded its obligation under the order by providing the defense with an unredacted 301 report.

{¶37} Because the trial court's dismissal was based on its wholly unfounded supposition that the state had violated an order of the visiting judge or that the state had violated the discovery rules, we sustain the assignment of error.

### The State Did Not Cause The Delays

{¶38} In its third assignment of error, the state argues that the trial court erred by finding that J.K.'s constitutional right to a speedy trial was violated.

{¶39} In its dismissal entry, the trial court stated, "This matter has been pending for fifteen months, as a result of the [s]tate's failure and refusal to comply with this [c]ourt's order." The court dismissed the case "due to the passage of time, and in the best interest of the juvenile."

{¶40} Even if a juvenile has a constitutional right to a speedy trial, in this case, we can readily determine that none of the continuances in this case had been occasioned by the state and that J.K. was not being held in detention on this robbery charge. The trial court blamed the case's 15-month delay on the state, but the record does not support this conclusion. The record reveals that the state complied with the court's orders, and properly disputed the magistrates' decisions within the framework established by the Juvenile Rules.

{¶41} Moreover, inasmuch as we have determined that the state committed no discovery violation and caused no delays in the case, there was simply no basis in the record

to conclude that a dismissal was warranted as being in the best interests of J.K. Juv.R. 29(F)(2)(d) permits a dismissal based on the best interests of the child and the community only when the allegations of the complaint, indictment, or information are admitted or proven, neither of which occurred here. The third assignment of error is sustained. We reverse the court's judgment dismissing the case against J.K., and remand this cause for further proceedings.

Judgment reversed and cause remanded.

**HILDEBRANDT** and **CUNNINGHAM, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.