# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 4, 2020

159924

PEOPLE OF THE STATE OF MICHIGAN,
             Plaintiff-Appellee,

v

AARON XAVIER JOHNSON,
             Defendant-Appellant.
_____/

SC:  159924
COA:  341318
Ottawa CC:  16-040655-FC

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

By order of November 8, 2019, the application for leave to appeal the May 28, 2019 judgment of the Court of Appeals was held in abeyance pending the decision in *People v Sammons* (Docket No. 156189).  On order of the Court, the case having been decided on March 16, 2020, 505 Mich 31 (2020), the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CAVANAGH, J. (*concurring*).

I concur in the order denying leave to appeal because ultimately the identification in question in this case is reliable.  However, the choice of the police to conduct this unnecessarily suggestive showup, and the Court of Appeals' commentary on that choice, warrants discussion.

Defendant robbed a pizza delivery driver at gunpoint in an apartment complex parking lot.  The driver returned to the restaurant where he worked and called the police.  The police informed the driver that they thought they had the robber and asked the driver to come identify him.  When the driver arrived, defendant was in the backseat of a police car, and the driver identified defendant as the robber.  Defendant was convicted by a jury of armed robbery, assault with a dangerous weapon, and carrying a firearm during the commission of a felony.

When a defendant challenges an identification procedure arranged by the state as suggestive, as this defendant has, courts apply a three-part test, asking whether "(1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable."  *People v Sammons*, 505 Mich 31, 41 (2020), citing *Perry v New Hampshire*, 565 US 228, 238-239 (2012).  Writing for the Court in *Perry*, Justice Ginsburg explained that a "primary aim" of excluding identification evidence that fails this test is to "deter law enforcement use of improper lineups, showups, and photo arrays in the first place."  *Perry*, 565 US at 241.  The test incorporates an exception for suggestive procedures when they are necessary, such in *Stovall v Denno*, 388 US 293 (1976), where the sole

witness was in the hospital awaiting surgery and "[n]o one knew how long [the witness] might live." *Id*. at 302. Courts stretch further and allow admission of even unnecessarily suggestive identification procedures that are nonetheless reliable. *Manson v Brathwaite*, 432 US 98, 112 (1977). This aspect of the test was not meant to bless unnecessarily suggestive identification procedures, but was an observation that excluding reliable evidence might "frustrate rather than promote justice . . . ." *Id*. at 113. That is not a decision for police to make. Police should not conduct a showup unless it is necessary.

Turning back to this case, the identification procedure here was clearly suggestive. As we said in *Sammons*, showups are inherently suggestive. *Sammons*, 505 Mich at 41-47. Taking a witness to view a suspect in the back of a police car " 'conveys a clear message that the police suspect *this* man.' " *Id*. at 43, quoting *Ex parte Frazier*, 729 So 2d 253, 255 (Ala, 1998). There is no indication I have found in the record or that the parties have identified as to why it might have been necessary to conduct the showup rather than conducting a fair procedure. The police ought not to have done this. Still, in affirming the conviction, the Court of Appeals appeared to sanction the practice. The Court of Appeals wrote that "[p]rompt on-the-scene confrontations are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance." *People v Johnson*, unpublished per curiam opinion of the Court of Appeals, issued May 28, 2019 (Docket No. 341318), p 2 (quotation marks and citation omitted). The Court of Appeals further said that "[o]n-the-scene identification also allows witnesses to make identifications when their memories are fresh" and "that it is proper . . . for the police to promptly conduct an on-the-scene identification." *Id*. (quotation marks and citation omitted; alteration in original). To the extent such practices could be accomplished with an unsuggestive procedure, I agree. But the police must avoid employing suggestive identification procedures whenever possible.

That said, the Court of Appeals correctly applied the reliability portion of the test, as it stands.[1] I agree that under the nonexclusive list of factors from *Neil v Biggers,*

---

[1] The Court of Appeals reasoned:

> The delivery driver's testimony indicated that he had a good opportunity to view the person who robbed him. The robber was within a couple feet of him during the robbery and wore nothing to hide his face. The delivery driver also indicated that the parking lot was lit by streetlights and that he was very focused on the robber and the gun during the encounter. He provided a description of the robber and his actions. Based on his description, police were quickly able to connect the robbery to the later firing of shots from defendant's vehicle. The delivery driver was then quickly able to identify defendant as the robber with a high degree of certainty. Additionally, the delivery driver identified defendant about an hour after the robbery occurred. Accordingly, the robber's appearance was still fresh in his mind. [*Id*.]

409 US 188 (1972), this identification was reliable. What is troubling, however, is that here, like in *Sammons*, the police appear to have administered the showup as a matter of course. In *Sammons*, the detective who administered the showup testified that there was nothing out of the ordinary about it. Here, not only did the police administer an unnecessary showup, but they employed some type of form for the occasion, which seems to indicate that showups were routinely used.

The choice of the United States Supreme Court to incorporate the reliability analysis in *Brathwaite* rather than apply a per se rule of excluding unnecessarily suggestive identifications relied on a prediction: "The police will guard against unnecessarily suggestive procedures under the totality rule, as well as the *per se* one, for fear that their actions will lead to the exclusion of identifications as unreliable." *Brathwaite*, 432 US at 112. The police appear not to have been correctly incentivized either in *Sammons* or here. Further, the records in both cases included indications that those choices were not isolated events, but examples of routine practices. Deterring this conduct by the police is the "primary aim" of this line of jurisprudence. *Perry*, 565 US at 241. But we continue to see indications that in Michigan it may be missing the mark. As we noted in *Sammons*, other states have interpreted their state protections differently than the federal protection in this regard. *Sammons*, 505 Mich at 50 n 13. However, as in *Sammons*, we have not been asked to reach that question in this case.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 4, 2020



Clerk

a1201